### Commonwealth *vs.* Andrey Rudenko.

No. 08-P-409.

Hampden. March 18, 2009. - June 8, 2009.

Present: Grasso, Smith, & Trainor, JJ.

*Breaking and Entering. Larceny. Building.*

At the trial of a criminal complaint charging the defendant with breaking and entering in the nighttime with intent to commit a felony, in violation of G. L. c. 266, § 16, as well as larceny over $250, in violation of G. L. c. 266, § 30, the evidence was sufficient to establish that the defendant and an accomplice broke and entered the locked, fenced-in delivery hall of a hardware store and stole two snow blowers, each valued at $1,200 [398-399]; further, the particular facts of the case supported the conclusion that the delivery hall was part of the hardware store's "building" for purposes of the first clause of G. L. c. 266, § 16 [399-402].

COMPLAINT received and sworn to in the Springfield Division of the District Court Department on October 14, 2003.

The case was heard by *John M. Payne, Jr.*, J.

*Charles W. Groce, III*, for the defendant.

*Sidney E. Reavey*, Assistant District Attorney, for the Commonwealth.

GRASSO, J. After a jury-waived trial, a judge found the defendant guilty of breaking and entering in the nighttime with intent to commit a felony, see G. L. c. 266, § 16, and larceny over $250, see G. L. c. 266, § 30. On appeal from those convictions, the defendant argues that the Commonwealth (1) presented insufficient evidence, and (2) failed to prove that he broke and entered a "building" within the meaning of the statute. We disagree and affirm the convictions.

1. *Sufficiency of the evidence.* As related in the Commonwealth's case at trial, Gary Coleman, a Home Depot employee, arrived at the West Springfield store at approximately 4 A.M. on

October 13, 2003, and soon noticed that two snow blowers were missing. Each weighed over 100 pounds and each was valued at $1,200. Prior to the store's closing the previous day, another worker, Eugene Lefebvre, had wrapped the snow blowers, strapped them onto pallets, tagged and addressed them, and left them in the "delivery hall" where they were to be lifted by forklift onto delivery trucks the next day.

The delivery hall is a fenced-in storage area used to house overstocked items and items prepared for delivery; it connects directly with the roofed-in portion of the Home Depot store. An overhead door permits passage from the roofed-in portion of the store to the delivery hall, which is enclosed on its other three sides by a chain link fence of some height. Two gates on the fence provide access for delivery trucks to enter the delivery hall. The gates are secured by locks at all times except when opened for the delivery trucks. Home Depot's security procedures are strict and provide for perimeter checks of the entire facility when the store opens in the morning and closes at night. Likewise, security procedures regulate the opening and closing of the delivery hall gates, the entrance and exit of delivery trucks, and access by employees. The public is not permitted to access the delivery hall.

When the Home Depot store closed on October 12, the store and its contents were secure. The same appeared to be true when assistant manager Michael Masciadrelli performed the standard opening procedure on the morning of October 13. Masciadrelli did not initially observe anything suspicious as he drove around the perimeter of the building. However, soon after arriving at work that morning, Coleman and other Home Depot employees informed him that two snow blowers scheduled for delivery were missing from the delivery hall where they had been placed the night before. In their search for the snow blowers, they discovered that the lock to the north end delivery hall gate had been bypassed, allowing the gate to be opened.[1] Inside the delivery hall, they found the empty pallets, shrink wrap, and banding, which appeared to have been cut with a sharp object.

Upon arriving at the store at 4 A.M., neither Coleman nor

---

[1] The wishbone assembly lock that secured the gate had been removed with a ratchet set that was found nearby.

Masciadrelli had observed any vehicles in the parking lot. However, while searching for the snow blowers, some time after 4:30 A.M., Coleman and Lefebvre noticed a white pickup truck parked outside the gate in the parking lot next to a Pep Boys store. They notified Masciadrelli, who directed them to stay inside and not investigate further. Masciadrelli confirmed the presence of the white truck and called the police.

Officer Nelson Zayas of the West Springfield police arrived at the scene and saw a white pickup truck and a man, later identified as the defendant, standing between the truck and a tree. The truck's tailgate had been removed and was lying in the bed of the truck. As he walked behind the truck, Zayas observed a bright orange snow blower, partially wrapped in plastic, behind the tree that the defendant was standing next to. Zayas questioned the defendant, who appeared nervous.

The defendant initially claimed to be an employee of Home Depot, an assertion soon dispelled when Masciadrelli arrived. Masciadrelli also identified two snow blowers behind the tree as the property of Home Depot.

Zayas asked Oleg Yusenko, who appeared to be sleeping in the front passenger seat, to step out of the truck. When Yusenko complied, a small utility knife fell to the floor. Zayas also observed a "fresh trail" leading from the northern delivery hall gate (where the lock had been removed) to the location of the defendant. He also noticed that both the defendant and Yusenko had wet grass and dirt stuck to their shoes and pants.

Viewed in the light most favorable to the Commonwealth, see *Commonwealth v. Latimore*, 378 Mass. 671, 677-678 (1979), the evidence and reasonable inferences were sufficient to establish that the defendant and Yusenko broke and entered the fenced-in delivery hall that is part of the Home Depot store and stole two snow blowers, each valued at $1,200. See *Commonwealth v. Cabrera*, 449 Mass. 825, 827 (2007); *Commonwealth v. Vickers*, 60 Mass. App. Ct. 24, 27 (2003). In the predawn hours, the defendant was found standing next to the empty flat bed of a truck capable of moving the heavy snow blowers that had been stolen some time the previous night; the truck's tailgate had been removed to facilitate loading. Inside the truck was a utility knife capable of cutting the strapping that bound the snow blowers to the pal-

lets; and a trail of wet grass and mud on the defendant's clothing corresponded to the trail leading from the delivery hall to the truck. The defendant's false explanation to Zayas provided further evidence of his guilt. See *Commonwealth* v. *Stuckich*, 450 Mass. 449, 453 (2008). The inference was strong that the defendant and Yusenko were in the process of loading the snow blowers they had stolen onto the truck when the police arrived.[2] See *Commonwealth* v. *Ronayne*, 8 Mass. App. Ct. 421, 425-426 (1979).

2. *"Building."* Whether the delivery hall is part of the Home Depot building is a closer question. On the particular facts present, we conclude that the delivery hall is part of the Home Depot "building" for purposes of the first clause of G. L. c. 266, § 16.[3]

The crime of breaking and entering is an ancient one, and examination of its common-law roots provides guidance in discerning the reach of the statute in the instant case. See *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984). The purpose of the burglary statutes is to protect the right of security in a place commonly associated with safety and refuge, the dwelling house. See *Commonwealth* v. *Goldoff*, 24 Mass. App. Ct. 458, 462 (1987). The statutes that prohibit the breaking and entering of a building serve a similar purpose, protecting the right of security in one's person and valuables, even when the building may not serve as a place of human habitation. The terms "dwelling" and "building" have generally been construed to further rather than frustrate these purposes. See *id.* at 459-460. See also *Commonwealth* v. *Burke, supra* at 689-690 (element of breaking broadly defined).

Where, as here, a statute does not define its terms, "we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose." *Commonwealth* v. *Goldoff*, 24 Mass. App. Ct. at 460, quoting from *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). "[U]n-

---

[2]The defendant's reliance on *Commonwealth* v. *Prentice P.*, 57 Mass. App. Ct. 766 (2003), is misplaced. Here, other facts beyond the defendant's mere presence near the stolen property created a reasonable inference that he had broken and entered and had stolen the snow blowers.

[3]In pertinent part, the first clause of the G. L. c. 266, § 16, as amended by St. 1985, c. 312, § 1, provides: "Whoever, in the nighttime, breaks and enters a building, ship, vessel or vehicle, with intent to commit a felony, . . . shall be punished . . . ."

like the term 'dwelling house,' which under certain criminal statutes has 'acquired a peculiar and appropriate meaning in law,' G. L. c. 4, § 6, . . . the term 'building' carries no such baggage. Therefore, absent a contrary legislative intent, the term is to be given its common and accepted everyday meaning, . . . as for example, 'a *structure* or edifice inclosing a space within its walls and *usually* . . . covered with a roof.' Black's Law Dictionary 194-195 (6th ed. 1990)." (Emphasis added.) *Commonwealth* v. *Jackson*, 37 Mass. App. Ct. 940, 941 (1994). See *Commonwealth* v. *McKinnon*, 446 Mass. 263, 268 (2006) ("dwelling" implies enclosed area).

With these principles in mind, we conclude that the locked, fenced-in delivery hall is part of the Home Depot building and under the protection of G. L. c. 266, § 16. See *Commonwealth* v. *Willard*, 53 Mass. App. Ct. 650, 654-655 (2002) (property secured within structure with expectation that it will be protected against theft is "under the protection of the building"). The delivery hall is an essential component of the Home Depot building. It shares a wall with the roofed portion of the building and is enclosed on its other three sides by a gated and locked fence that restricts access. An overhead door provides direct access between the roofed and fenced-in portions of the building. The safety, security, and protection of valuable Home Depot merchandise is as much an issue in the delivery hall as in the roofed portion of the building, where customers complete their purchases.

The fact that the delivery hall lacks a roof is not determinative, where its other physical characteristics, including its contiguity to the roofed portion, shared wall, restricted access, and use for storage of valuable merchandise sold there, indicate that it is an integral part of the building proper. Nor should the protection of the statute turn on whether the defendant accomplished his breaking and entering of the building and larceny of the snow blowers by going through the front door of the roofed portion of the building rather than through the locked gate to the delivery hall.

Decisions from other States interpreting their burglary and breaking and entering statutes are of limited value given the differences in statutory expression. Supporting the view that we take is the decision in *Garrett* v. *State*, 259 Ga. App. 870 (2002). There, in similar circumstances, the Court of Appeals of Georgia

concluded that the defendant violated Georgia's burglary statute when he cut a chain link fence topped with barbed wire and removed a commercial grade lawn mower from a storage shelter attached to the rear of a farm and lawn business.[4] The court reasoned "that the contiguous nature of the storage shelter, as well as its accessibility from the main building renders it 'a part' of the main building for purposes of [Ga. Code Ann. § 16-7-1(*a*) (2007), the burglary statute]. Further, the purpose of the shelter as a storage structure for valuable goods, its relevance to the business, and its inaccessibility to the public when the business is secured render the shelter a 'building' under the statute . . . ." *Garrett* v. *State, supra* at 871.

Such a view is not shared universally, and other State decisions interpreting their particular statutes support a contrary view, albeit on different facts. See *In re E.S.,* 93 Ill. App. 3d 171, 174 (1981) (fenced-in area abutting automobile body shop containing customers' parked cars awaiting repair not "building"); *State* v. *Gamble,* 56 N.C. App. 55, 56, 59 (1982) ("partially" fenced area not "building" for purposes of statute prohibiting breaking and entering of building). In the particular factual context before us, we consider the conclusion that the delivery hall is part of the Home Depot building, notwithstanding its lack of a roof, to be more consonant with the purposes of G. L. c. 266, § 16, and accepted understanding.

At trial and in argument, the Commonwealth suggested as an alternative that the defendant was liable because the delivery hall is a "depository" within the meaning of the second clause of the statute that prohibits the breaking of a "depository of . . . valuables in any building, vehicle or place, with intent to commit a larceny or felony."[5] We view the facts as inapposite

---

[4]The shelter was open on three sides and covered with a metal roof. The shelter and the main building shared a wall containing a connecting door and the shelter was completely enclosed within the chain link fence surrounding the building compound that rendered the shelter and its contents unavailable to the public when the business was secured. *Garrett* v. *State,* 259 Ga. App. at 871.

[5]In pertinent part, the second clause of G. L. c. 266, § 16, as appearing in St. 1985, c. 312, § 1, provides: "[Whoever] . . . attempts to or does break, burn, blow up or otherwise injures or destroys a safe, vault or other *depository* of money, bonds or other *valuables in any building,* vehicle or *place,* with intent to commit a larceny or felony . . . shall be punished . . . ." (emphasis supplied).

to such an interpretation. Because we have concluded that the delivery hall is *part of the building*, it follows that the delivery hall cannot also be a *"depository* of . . . valuables *in* [a] building or place" (emphasis supplied). G. L. c. 266, § 16, as appearing in St. 1985, c. 312, § 1.

*Judgments affirmed.*