# United States Court of Appeals
## For the First Circuit

Nos. 09-2084, 09-2146

UNITED STATES OF AMERICA,

Appellee/Cross-Appellant,

v.

ROBERT BROWN III,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Boudin and Howard, Circuit Judges,

and Barbadoro,* District Judge.

Robert C. Andrews, by appointment of the court, with whom
Robert C. Andrews P.C. was on brief for defendant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D.
Silsby, United States Attorney, was on brief for appellee/cross-
appellant.

January 27, 2011

---

*Of the District of New Hampshire, sitting by designation.

**BOUDIN, Circuit Judge**.  In December 2003, Robert Brown III was serving the tail end of a federal sentence for a prior cocaine trafficking offense at Pharos House, a Bureau of Prisons community corrections facility in Portland, Maine.  Another resident, after testing positive for cocaine use, told federal agents that one of those supplying him drugs had said that Brown was the dealer's supplier.  In January 2004, that resident, cooperating with federal agents, made a controlled purchase of 2.4 grams of cocaine from Brown.

Brown was indicted for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (2006).  His first trial ended in a mistrial, but this court affirmed the district court's denial of a motion to dismiss the indictment on double jeopardy grounds.  United States v. Brown, 426 F.3d 32, 39 (1st Cir. 2005), cert. denied, 546 U.S. 1189 (2006).  Brown was convicted at his retrial in 2006.  Under 21 U.S.C. § 841(b)(1)(C), he faced a statutory maximum of 360 months.

The pre-sentence report ("PSR") determined that the base offense level was 12, which combined with Brown's criminal history points (placing him in category V) would have set the guidelines range at 27 to 33 months.  However, the PSR concluded that Brown should receive an enhanced sentence as a career offender, a designation that applies to one who, being 18 or older at the time of the instant offense, commits a felony that is either a drug

-2-

offense or a "crime of violence" and who has at least two other such convictions.  U.S.S.G. § 4B1.1(a) (2005); <u>see also</u> 28 U.S.C. § 994(h) (2006).  The guidelines define the phrase "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

Brown was 32 years old at the time he committed the instant offense, and the PSR found him to be a career offender based on a 1999 federal felony conviction for cocaine trafficking-- which undisputedly counts as a drug offense--and a 1989 Massachusetts felony conviction for breaking and entering Coleman's Sporting Goods store in the night time, which the PSR counted as a "crime of violence" within the meaning of section 4B1.2(a)(2).  The district court's treatment of the latter offense is the focus of this appeal.

At the time of the initial sentencing hearing in August 2006, Brown objected that night-time burglary of something other than a residence--as defined by Massachusetts--does not constitute

a crime of violence under the guidelines. But at that time First Circuit precedent treated non-residential burglary as a per se "crime of violence" within the meaning of section 4B1.2(a)(2). United States v. Sawyer, 144 F.3d 191, 195-96 (1st Cir. 1998); United States v. Fiore, 983 F.2d 1, 4-5 (1st Cir. 1992), cert. denied, 507 U.S. 1024 (1993). The district court sentenced Brown to 262 months, within the guidelines range for a career offender.

Brown appealed, and during his appeal, this court decided United States v. Giggey (Giggey I), 551 F.3d 27 (1st Cir. 2008) (en banc), overruling Sawyer and Fiore. Giggey I held that whether a conviction for non-residential burglary counts as a crime of violence turns on the application of section 4B1.2(a)(2)'s residual clause, id. at 28-29, which requires that the state statute of conviction categorically describe "conduct that presents a serious potential risk of physical injury to another," id. at 39 (quoting United States v. Peterson, 233 F.3d 101, 107 (1st Cir. 2000)) (internal quotation mark omitted).

On remand, the district court found that Brown's conviction was under a Massachusetts statute, Mass. Gen. Laws ch. 266, § 16 (2008), which did not categorically meet the residual clause test, that Brown's burglary conviction was not a career offender predicate, and that he should not be sentenced as a career offender. The district court, after considering all of the 18 U.S.C. § 3553(a) (2006) factors, imposed a sentence of 75 months in

prison.  Before us now are competing appeals by the government and by Brown.

The government's claim is that the district court misapplied Giggey I in ruling that Brown's 1989 burglary conviction was not a crime of violence.  The first step, easily accomplished, is to identify the statute of conviction.  Massachusetts has several burglary statutes;[1] among them, section 16 encompasses night-time burglary of a building, ship, vessel, or vehicle with intent to commit a felony.  The district court found that Brown's conviction was based on section 16 and, despite Brown's claim that the government did not carry its burden of proof, the finding is correct.

To meet its burden, the government produced the indictment and certified records of the case from the Massachusetts court of conviction, which consisted of the docket sheet and the clerk's notes.  See United States v. Bryant, 571 F.3d 147, 156 (1st

---

[1]In general terms and only in pertinent part, the statutes referring to buildings are (1) armed night-time breaking and entering a dwelling with intent to commit a felony, Mass. Gen. Laws ch. 266, § 14; (2) unarmed night-time breaking and entering a dwelling with intent to commit a felony, id. § 15; (3) night-time breaking and entering a building, ship, vessel, or vehicle with intent to commit a felony, id. § 16; breaking and entering a building, ship, vessel, or vehicle with intent to commit a misdemeanor, id. § 16A; night-time entering without breaking or daytime breaking and entering an occupied building, ship, vessel, or vehicle with intent to commit a felony, id. § 17; and night-time entering without breaking an unoccupied dwelling or daytime entering and breaking an unoccupied building, ship, vessel, or vehicle with intent to commit a felony, id. § 18.

Cir. 2009); United States v. McKenzie, 539 F.3d 15, 19 (1st Cir. 2008). The indictment alleged that Brown "did break and enter in the night time the building, of Col[e]man's Sporting Goods, situated in said Canton, with intent therein to commit a felony," and although it did not cite section 16 or any other provision, the wording more or less tracked section 16.

The certified state court records, which stated that Brown pled guilty and was sentenced to two-and-a-half years in prison on October 17, 1989, also did not specify the statute, but they listed the offense as "Breaking & Entering in the Night Time." The title of Mass. Gen. Laws ch. 266, § 16 is "Breaking and entering at night"; no other statute has a similar title. Nor does Brown point to any other breaking and entering provision which so closely approximates the conduct with which he was charged in the indictment. So assuredly Brown was convicted under section 16.

"Whether a prior conviction qualifies as a predicate offense under U.S.S.G. § 4B1.1 is a question of law that we review de novo." United States v. Almenas, 553 F.3d 27, 31 (1st Cir.), cert. denied, 129 S. Ct. 2415 (2009). The Supreme Court has mandated a categorical approach, so that the designation "crime of violence" depends not on whether the defendant's particular conduct was violent, but on whether the "offense of conviction" meets the requirements of the guidelines definition; and, while the definition is a federal one set forth in the guidelines, it is

-6-

applied to the range of conduct that falls within the state statute. <u>United States</u> v. <u>Giggey</u> (<u>Giggey II</u>), 589 F.3d 38, 41 (1st Cir. 2009).

There may be, and is here, a preliminary question: sometimes the statute in question may encompass multiple crimes, <u>see</u> <u>Almenas</u>, 553 F.3d at 33, and if so this will often require identifying a particular crime--<u>within</u> the broader category--of which the defendant was convicted. And, in making this latter identification, the Supreme Court allows us to consult only a restricted set of <u>Shepard</u>-approved sources (<u>e.g.,</u> charging document, written plea agreement, transcript of plea colloquy). <u>Giggey II</u>, 589 F.3d at 41-42 (citing <u>Shepard</u> v. <u>United States</u>, 544 U.S. 13, 26 (2005); <u>Taylor</u> v. <u>United States</u>, 495 U.S. 575, 602 (1990)).

Brown was convicted of violating Mass. Gen. Laws ch. 266, § 16, which provides in full:

> Whoever, in the night time, breaks and enters a building, ship, vessel or vehicle, with intent to commit a felony, or who attempts to or does break, burn, blow up or otherwise injures or destroys a safe, vault or other depository of money, bonds or other valuables in any building, vehicle or place, with intent to commit a larceny or felony, whether he succeeds or fails in the perpetration of such larceny or felony, shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than two and one-half years.

This statute covers multiple crimes, but the question of how far to subdivide a statute is far from settled, and under the categorical approach this may determine how the crime of conviction is classified. In such a multi-clause and string-phrased statute as section 16, it may be easy enough to distinguish as separate crimes the breaking and entering offense from the safe, vault, or other depository offense, and as separate crimes the breaking and entering a building offense from the breaking and entering a boat offense. See Nijhawan v. Holder, 129 S. Ct. 2294, 2299 (2009); Taylor, 495 U.S. at 602. But here the government and the district court assumed that night-time breaking and entering a "non-dwelling building" is the crime to be categorized.

The statute's language does not suggest such a subdivision, and nothing cited to us in Massachusetts decisions or jury instructions suggests that it has been imported by judicial construction. Nor is such a subdivision readily inferred by juxtaposing adjacent sections; true, sections 14 and 15 both create offenses dealing directly with burglary of a dwelling, so one might think that section 16 is implicitly intended to apply only to non-dwellings, but case law negates that suggestion. E.g., Commonwealth v. Poff, 775 N.E.2d 1246, 1247-48 (Mass. App. Ct. 2002); Commonwealth v. McCaffery, 732 N.E.2d 911, 915-16 (Mass. App. Ct. 2000).

-8-

Absent statutory or similar clues, a court's creation of its <u>own</u> subdivisions may start down a slippery slope, ending with the selection of characteristics of the particular crime <u>as committed by the defendant</u>--the opposite of the categorical approach. In fact, the circuits have reached different outcomes in addressing this problem,[2] sometimes unconsciously, and even within our own circuit the case law may not be crystal clear. A closely related issue is whether <u>Shepard</u> materials are to be used only to identify the offense among those created by the statute or (again the slippery slope problem arises) to create categories of offenses. <u>Compare</u> <u>United States</u> v. <u>Matthews</u>, 374 F.3d 872, 877 (9th Cir. 2004), <u>with</u> <u>Giggey I</u>, 551 F.3d at 40.

These problems have to be addressed eventually, but not here: whether the offense is treated as night-time burglary of a building or as night-time burglary of a non-dwelling building, the offense does not reach the level of "crime of violence." Assuredly, the offense does not have "as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1), nor is it one of the four enumerated offenses in section 4B1.2(a)(2) (burglary of a

---

[2]<u>Compare</u> <u>United States</u> v. <u>Parks</u>, 620 F.3d 911, 913-14 (8th Cir. 2010), <u>United States</u> v. <u>Lipscomb</u>, 619 F.3d 474, 477 (5th Cir. 2010), <u>and</u> <u>United States</u> v. <u>Woods</u>, 576 F.3d 400, 414-15 (7th Cir. 2009) (Easterbrook, J., dissenting), <u>with</u> <u>Lipscomb</u>, 619 F.3d at 493 (Stewart, J., dissenting), <u>and</u> <u>Woods</u>, 576 F.3d at 406, <u>with</u> <u>United States</u> v. <u>Daye</u>, 571 F.3d 225, 229 n.4 (2d Cir. 2009).

dwelling, arson, extortion, or use of explosives).  This leaves only the residual clause of the latter section, embracing a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  Id. § 4B1.2(a)(2).

Under the residual clause, the sentencing court looks to whether the risk of the crime is similar in degree to its closest analog among the enumerated offenses, which here is "burglary of a dwelling," and is similar in kind to the enumerated offenses. Giggey I, 551 F.3d at 40-41.  Addressing burglary of a non-dwelling building, our sister circuits are divided in not just two but three different ways.[3]  Giggey I noted that the Sentencing Commission had carved out burglary of a dwelling as an enumerated crime, id. at 34-35; and in Giggey II we left standing the district court's refusal to apply the residual clause to a Maine offense analogous, although not identical to, non-dwelling burglary, 589 F.3d at 43.

---

[3]The Second and Eighth Circuits have held that non-residential burglary is per se a "crime of violence" under § 4B1.2(a)(2).  See United States v. Brown, 514 F.3d 256, 268-69 (2d Cir. 2008); United States v. Hascall, 76 F.3d 902, 906 (8th Cir. 1996).  The Fourth, Tenth, and Eleventh Circuits have held that non-residential burglary is per se not a "crime of violence" under § 4B1.2(a)(2). See United States v. Harrison, 58 F.3d 115, 119 (4th Cir. 1995); United States v. Spell, 44 F.3d 936, 938-39 (11th Cir. 1995) (per curiam); United States v. Smith, 10 F.3d 724, 732-33 (10th Cir. 1993) (per curiam).  Four other circuits have rejected both per se rules.  See Matthews, 374 F.3d at 880; United States v. Hoults, 240 F.3d 647, 652 (7th Cir. 2001); United States v. Wilson, 168 F.3d 916, 926-29 (6th Cir. 1999); United States v. Jackson, 22 F.3d 583, 585 (5th Cir. 1994).

One might think that--notwithstanding the government's concession that the category is non-dwellings--including dwellings as well as other buildings within the ambit of section 16 would push the outcome in the government's favor because the category would then include some scenarios that the Sentencing Commission itself views as crimes of violence. But "building," as used commodiously in the state statute, cf. James v. United States, 550 U.S. 192, 202-03, 213 (2007), includes not just stores and office buildings but an array of structures--detached garages and storage facilities, for example--that may invite theft of property but would only rarely expose individuals to violence.[4]

In so broadly defined a universe, the threat of violence during the offense is fairly speculative. Here, the government stresses the element of night-time entrance, arguing that Massachusetts regards night-time entry as an aggravating circumstance and that night-time entry does increase the risk of violence. The question of how great a threat is enough is a question of federal law, Giggey I, 551 F.3d at 39, but we agree

---

[4]In Commonwealth v. Rudenko, 907 N.E.2d 254 (Mass. App. Ct. 2009), the court stated that "the term [building] is to be given its common and accepted everyday meaning, . . . as for example, 'a structure or edifice inclosing a space within its walls and usually . . . covered with a roof.' Black's Law Dictionary 194-195 (6th ed. 1990)." Id. at 257 (quoting Commonwealth v. Jackson, 641 N.E.2d 711, 712 (Mass. App. Ct. 1994)) (emphasis removed). Section 16 applied to a burglary of a "locked, fenced-in delivery hall" that shared a wall with a Home Depot building but that lacked a roof, because the delivery hall counted as a "building." Id. at 257-58.

independently that night-time entry--_if_ someone is present in the building--enhances the risk of violence, because of surprise, limited light, and (for commercial buildings) the fact that only a watchman or isolated worker may be present.

The Supreme Court says to ask whether the offense to be classified is "roughly similar, in kind as well as in degree of risk posed," with the enumerated crimes designated as violent. Begay v. United States, 553 U.S. 137, 143 (2008). Burglary of a building is comparable in _kind_ to one of the listed offenses (burglary of a dwelling), so the issue is one of comparability of risk. Although the question may be close, we do not think that the risks of burglary of a "building"--at least given Massachusetts' broad definition--are comparable to burglary of a "dwelling," whether the concern is with night-time entry or entry at any time.

Dwellings are regularly occupied at all hours by individuals--often young or elderly, and if at night asleep--and the stories of surprise encounters and subsequent violence with felons entering to do mischief are legion. Buildings are of various kinds and, if night-time entry compounds the risk to anyone already present, the reality is that many buildings are often wholly unoccupied at night. As already noted, the Massachusetts statute covers a range of structures like storage sheds or detached garages where one might rarely encounter someone else at night.

The government says that such an outcome is an unwarranted per se rule, but per se rules are inherent in a categorical approach that asks whether an "offense" defined by a statute poses the requisite risk. In Giggey I, to which the government draws attention, we noted that some non-dwelling burglary statutes might fit the violent crime category and others not, 551 F.3d at 39-40; but this meant only that the elements of such offenses vary from state to state. If Brown were tried for a state offense of "armed" burglary of a building, cf. Mass. Gen. Laws ch. 266, § 17, this would be a different case.

This brings us to Brown's own appeal in which he attacks as unreasonable his 75-month prison sentence. The rejected career offender label would have made the guidelines range 262 to 327 months; without that designation, the range was 27 to 33 months, so the sentence imposed was substantially above the applicable range. The district court explained that Brown's extensive criminal record and repeated recidivism over many years required the longer sentence both for deterrence and to protect the public.

Since United States v. Booker, 543 U.S. 220 (2005), our standard of review of sentences is deferential and, absent procedural or guidelines error, sentencing is a "judgment call," the ultimate test being "a plausible sentencing rationale and a defensible result." United States v. Gentles, 619 F.3d 75, 88-89 (1st Cir.), cert. denied, 131 S. Ct. 622 (2010) (quoting United

-13-

States v. Martin, 520 F.3d 87, 92, 96 (1st Cir. 2008)) (internal quotation mark omitted). So such substantive challenges are difficult, but Brown is entitled to have us decide his claim-- unless it is moot.

A Rule 28(j) letter filed by the government informs us that Brown was released from his prison sentence on June 11, 2010, while this appeal was pending, and immediately began to serve his term of supervised release, and this has been confirmed. With or without objection by a party, we are obliged ourselves to consider whether a claim is moot. United States v. Cotton, 535 U.S. 625, 630 (2002); Weaver's Cove Energy, LCC v. R.I. Coastal Res. Mgmt. Council, 589 F.3d 458, 467 (1st Cir. 2009).

The usual test is whether the party making the claim has throughout the lawsuit "an actual injury traceable to the defendant" and capable of redress by a favorable judicial decision. Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990)). "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)).

Of course, Brown's prison sentence, having been served, "cannot be undone," Spencer, 523 U.S. at 8, and the supervised term

imposed was the minimum six-year period required by statute, 21 U.S.C. § 841(b)(1)(C), because Brown had a prior felony drug conviction. Any automatic "credit" against this term for unwarranted prison time already served, to be applied on a remand, may be barred by case law,[5] nor is it clear--there is a conflict on this issue--that Brown could obtain a discretionary credit in a collateral proceeding to reduce or to terminate his supervised release term, see 18 U.S.C. § 3583(e).[6]

Still, a court would likely work hard to avoid an injustice if Brown had served an unduly long sentence, and--as the possible objections to relief have never been adopted by this circuit--we would be hard put to conclude now that redress would be "impossible." See Church of Scientology, 506 U.S. at 12. Nor, given these uncertainties, does Brown lack an adequate incentive to litigate the question of whether his sentence was improper. The merits, however, are readily resolved against him.

In this case, Brown just barely avoided the guidelines label of "career offender." This is not merely on account of the closeness of the guidelines issue with which we have just dealt.

_____

[5]See United States v. Johnson, 529 U.S. 53, 57-60 (2000); United States v. Goldberg, 239 F. App'x 993, 994 (6th Cir. 2007); United States v. Williams, 475 F.3d 468, 479 (2d Cir. 2007), cert. denied, 552 U.S. 1105 (2008).

[6]Compare Mujahid v. Daniels, 413 F.3d 991, 995 (9th Cir. 2005), cert. denied, 547 U.S. 1149 (2006), with Burkey v. Marberry, 556 F.3d 142, 149 (3d Cir.), cert. denied, 130 S. Ct. 458 (2009).

-15-

The PSR indicates that, in the course of the break-in at the sporting goods store, Brown was engaged in stealing firearms (and was thereafter convicted of carrying a firearm along with the burglary and a larceny offense).  The government has not claimed that firearm possession is a predicate offense; but the court was certainly entitled to consider Brown's overall record.

Brown's record in the PSR includes a youthful breaking and entering offense and convictions for the following: the night-time breaking and entering conviction at issue here (together with convictions for carrying a firearm and larceny of over $250), attempted car theft, drug possession, possession of burglary tools, a further drug possession offense, possession with intent to distribute cocaine base, and the present drug distribution offense committed while Brown was still in federal custody for his prior drug offense.

Two comments (among a number of others) from the district judge sum up the situation: that "the extended criminal history of this defendant . . . show[s] a non-stop pattern of criminal activity that began at age 15 and extended to a period of time when he was committing criminal offenses while serving his sentence previously imposed in federal court" and that "[t]he longest period of time you haven't had a conviction was from the last time I sentenced you, and that's because you were locked up."

Affirmed.