# United States Court of Appeals
## For the First Circuit

No. 10-1140

UNITED STATES OF AMERICA,

Appellee,

v.

JAMES F. FARRELL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Tina Schneider for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Peter F. Neronha, United States Attorney, and Stephanie S. Browne, Assistant United States Attorney, were on brief, for appellee.

February 17, 2012

**HOWARD, Circuit Judge.** Following a jury trial, James Farrell was convicted of being a felon in possession of a firearm. Finding that Farrell had three prior violent felony convictions, the district court sentenced Farrell to fifteen years in prison, the mandatory minimum sentence under the Armed Career Criminal Act (ACCA). See 18 U.S.C. § 924(e). On appeal, Farrell claims that his prior convictions did not fall within the ambit of the ACCA and seeks remand for resentencing. He also argues that his attorney was constitutionally deficient in failing to properly object to his sentence. After careful review, we remand for resentencing.

## I.

In June 2005, a federal grand jury in Rhode Island indicted Farrell on one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g).[1] Prior to trial, the government, pursuant to 21 U.S.C. § 851, filed an information alleging that Farrell was subject to the ACCA's mandatory minimum sentence based on his three prior convictions, which were for two Pennsylvania burglaries and a Massachusetts breaking-and-entering. The government also submitted state court records relating to those convictions. Farrell's first trial ended

---

[1]See 18 U.S.C. § 922(g)(1) ("It shall be unlawful for any person . . . who has been convicted . . . of[] a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess . . . any firearm or ammunition . . . .").

in a hung jury in September 2009.  He was convicted after a second trial roughly a month later.

A Presentence Investigation Report (PSR) addressed the predicate convictions, observed that they satisfied the ACCA, and concluded that Farrell was subject to a United States Sentencing Guidelines (Guidelines) range of 188-235 months imprisonment. Farrell objected to neither the section 851 information nor the contents of the PSR.  The sentencing hearing was similarly bereft of acrimony. The defense proffered no objection to the Guidelines calculation; the government, taking into account Farrell's age (67), recommended a sentence at the bottom end of the range and offered little rebuke to defense counsel's request for a variance from the Guidelines range down to the statutory mandatory minimum of 180 months.  The district court acceded to the defense request and sentenced Farrell accordingly.

## II.

Farrell claims on appeal that none of the prior convictions lodged against him were "violent felonies" within the meaning of the ACCA.  Relatedly, he argues that his attorney's failure to object to the PSR or at sentencing amounted to ineffective assistance of counsel in violation of his Sixth Amendment rights.

## A. Standard of Review

Ordinarily, we engage in de novo review of a district court's legal conclusion that a prior conviction is a violent felony under the ACCA. United States v. Luna, 649 F.3d 91, 106 (1st. Cir. 2011), cert. denied, No. 11-7278, 2011 WL 5523266 (Dec. 12, 2011). Because, however, Farrell did not object below to the inclusion of the alleged predicate offenses at issue, we review for plain error. United States v. Weekes, 611 F.3d 68, 72 (1st Cir. 2010), cert. denied, 131 S. Ct. 3021 (2011). In order to meet this rigorous standard, Farrell must identify: 1) an error 2) that was clear and obvious 3) that affected his substantial rights, and 4) that seriously impaired the fairness, integrity, or public reputation of the judicial proceeding. United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011).

## B. The ACCA

The ACCA mandates a fifteen-year minimum prison sentence for anyone convicted of being a felon in possession of a firearm who also has three previous convictions for a violent felony. 18 U.S.C. § 924(e). A prior offense qualifies as a "violent felony" under the ACCA if it is both punishable by a prison term longer than one year and either "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a

serious potential risk of physical injury to another."  Id. §
924(e)(2)(B).  We have referred to clause (i) as the "force clause"
and the section of clause (ii) after the four enumerated offenses
as the "residual clause."  See United States v. Holloway, 630 F.3d
252, 256 (1st Cir. 2011).

We take a "categorical approach" in determining whether
a prior conviction qualifies as a "violent felony" under the ACCA.
Id. (citing Taylor v. United States, 495 U.S. 575, 600 (1990)).
"[W]e may consider only the offense's legal definition, forgoing
any inquiry into how the defendant may have committed the offense."
Id. (citing Taylor, 495 U.S. at 600; Begay v. United States, 553
U.S. 137, 141 (2008)).

The first step in this process is identifying the offense
of conviction.  Id. (citing United States v. Giggey, 589 F.3d 38,
41 (1st Cir. 2009) ("Giggey II")).  As this case demonstrates, this
task can be a complicated one when a prior conviction is based on
a statute that covers multiple offenses.  In that scenario, the
sentencing court is permitted to consider a limited group of
records (hereinafter "Shepard documents") to assist in determining
which particular offense was the actual foundation for the
conviction.  Shepard v. United States, 544 U.S. 13, 26 (2005);
Giggey II, 589 F.3d at 41.  The Supreme Court has observed that
"approved" records include charging documents, plea agreements and
colloquies, bench trial fact-finding and legal conclusions, jury

-5-

instructions and verdict forms, or some comparable judicial record. Shepard, 544 U.S. at 26; Holloway, 630 F.3d at 257; see also Johnson v. United States, 130 S. Ct. 1265, 1273 (2010); United States v. Pratt, 568 F.3d 11, 21 (1st Cir. 2009). A court may not, however, rely on police reports to inform its decision. Shepard, 544 U.S. at 16.

Finally, "if at least one of the possible offenses of conviction would not qualify as a violent felony, the conviction may not be relied on for ACCA purposes. In such a case, it is impossible to tell whether the defendant was convicted of a violent or non-violent felony." Holloway, 630 F.3d at 257 (emphasis in original).

## C.  Predicate Offenses

### 1.  1977 Pennsylvania Burglary

In October 1977, Farrell was convicted of burglary, in violation of 18 Pa. Cons. Stat. Ann. § 3502(a), which provided,[2] in relevant part, as follows:

> A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

The statute is further illuminated by the definition of "occupied structure" as "[a]ny structure, vehicle or place adapted for

---

[2]The statute has since been amended in ways not relevant here.

overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present."  18 Pa. Cons. Stat. Ann. § 3501.

This statute does not have as an element the threat or use of physical force, so it does not come within clause (i) of the ACCA.  With respect to clause (ii), the Supreme Court has held that "burglary," within the meaning of clause (ii), refers only to "generic burglary," which the Court has defined as "the unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor, 495 U.S. at 599.  A state statute that proscribes such conduct in a wider array of places "such as automobiles and vending machines, other than buildings" is broader than "generic burglary" and is thus not within the purview of clause (ii).  Id.  The government, recognizing the Third Circuit's holding in United States v. Bennett, 100 F.3d 1105, 1109 (3rd Cir. 1996), concedes that the "occupied structure" definition makes the Pennsylvania statute non-generic on its face.  We turn then to the Shepard documents to determine whether the Farrell's conviction necessarily included the elements of generic burglary. See Taylor, 495 U.S. at 602 (holding that offense constitutes ACCA "burglary" if either the statutory definition substantially corresponds to generic burglary or the charging papers and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant).

The government has submitted on appeal documents underlying the alleged predicate convictions. These records were, for the most part, not before the district court. We generally do not consider evidence that was not part of the district court record. See, e.g., United States v. Rosario-Peralta, 175 F.3d 48, 56 (1st Cir. 1999). Farrell, however, does not contest our consideration of the government's supplemental submission, conceding at oral argument that had he objected below, the evidence would likely have been submitted to the district court.[3] See also United States v. Kane, 434 F. App'x. 175, 176-77 (4th Cir. 2011) (taking judicial notice in ACCA appeal of state court indictment not submitted to district court at sentencing); United States v. Mercado, 412 F.3d 243, 247-48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

---

[3]We reject the government's contention that Farrell has waived -- rather than forfeited -- his ACCA argument. Under the circumstances of this case, the failure to object to the PSR does not constitute an "intentional relinquishment or abandonment" of the right to contest the legal adequacy of the ACCA finding. United States v. Olano, 507 U.S. 725, 733 (1993); see United States v. Jiminez, 512 F.3d 1, 6 (1st Cir. 2007) (finding waiver where defendant was "expressly invited" to object to inclusion of predicate offenses in PSR). Similarly, defense counsel's request for leniency -- in the form of an eight month variance down to the statutory minimum -- is not an abandonment of the claim made here that the predicates do not qualify for ACCA consideration.

The criminal complaint[4] filed in connection with the 1977 case provided that Farrell:

> did unlawfully enter the St. Joseph's convent . . . and did at this time enter the second floor portion of this residence which is the area which contains the convent safe, money and valuables. The . . . defendant . . . was confronted by Sister Rita Marie Zahorchimny. The defendant did . . . physically grab [her] by the arms and throw her across the room [and] did then flee the premises.

The subsequent information echoed the complaint, charging that Farrell "did feloniously enter a building or occupied structure, or separately secure or occupied portion thereof, property of, St. Joseph Convent . . . with intent to commit a crime therein." Farrell pled guilty to the charge. The record of the plea noted that Farrell admitted to committing the crime charged.

Against this backdrop, we can find no error, and certainly no error that was plain, in the district court's implicit conclusion that Farrell's 1977 burglary conviction fits squarely within the contours of "generic burglary." See Taylor, 495 U.S. at 599.

---

[4]Criminal complaints in Pennsylvania are considered charging instruments. See Garcia v. Att'y Gen., 462 F.3d 287, 292 (3d Cir. 2006) (citing Commonwealth v. Mitchell, 372 A.2d 826, 829 (Pa. 1977)); cf. Shepard, 544 U.S. at 16 (holding that sentencing courts may not rely on police reports or complaint applications in ACCA predicate felony analyses).

### 2.  1980 Pennsylvania Burglary

In September 1980, Farrell was charged with violating the same Pennsylvania burglary statute.  He was convicted in 1981.  The complaint charged him with entering a:

> building, occupied structure or separately secured or occupied portion thereof . . . being a house, next to a church, property of St. Patrick's Catholic church and the residence of Father Snyder with the intent to commit a crime therein in that he did break open [sic] outside door of house leading into the bedroom of Father Snyder and he did enter the house and room, and when confronted by Father Snyder he did run from said house.

The jury verdict slip noted that Farrell was found guilty of both burglary and criminal trespass.  Considering these facts, which bear no significant difference from the 1977 burglary, we find no plain error in the finding below that the 1980 Pennsylvania burglary was properly considered an ACCA predicate.

### 3.  1980 Massachusetts Breaking-and-Entering

Farrell's 1980 Massachusetts conviction presents a stickier wicket.  The government relies on the same evidence that it submitted in the district court -- a single entry which it claims is from a Newburyport (Mass.) District Court docket sheet.  The entry itself, however, while attested-to as a "true copy," is devoid of information as to the document's identity.  An entry indicates that a defendant named "James Farrel"[5] was charged in

---

[5]The correct spelling of the appellant's surname is "Farrell."

March 1980 in case number 2482 of breaking-and-entering in the daytime to commit a felony. A judgment of guilty was noted on June 2, 1980, as was a one-year suspended sentence and probation.[6]

Despite the paucity of information, the parties agree that, among several extant Massachusetts statutes, there were only two possible statutes of conviction.[7] During the relevant time period, Mass. Gen. Laws ch. 266, § 17 provided that:

> Whoever . . . breaks and enters in the day time, a building, ship or vessel, with intent to commit a felony, the owner or any other person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years.

Mass. Gen Laws ch. 266, § 18 provided that:

> Whoever . . . breaks and enters in the day time a building, ship or vessel, with intent to commit a felony, no person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years and by a fine of not more than five hundred dollars and imprisonment in jail for not more than two years.

The parties further agree that the inclusion of "ship[s] or vessel[s]" within the statutory proscriptions takes the statute of conviction outside the confines of "generic" burglary, which

---

[6]Although the government states in its brief that Farrell pled guilty to the charge, the submitted document notes only an original plea of not guilty in April 1980 and an entry of "guilty" dated "6-2-80" under the column headed "judgment." There is no indication whether the judgment followed a trial or guilty plea.

[7]Both statutes have since been amended to include vehicles within their ambit.

requires a building or other structure as a target.  Taylor, 495

U.S. at 598.  Moreover, in light of the scant available records,

the possibility that the burglary was of a vessel or ship cannot be

excluded.[8]  Thus, the government's only available argument is that

Farrell's Massachusetts conviction fits within the ACCA's residual

clause because it "otherwise involves conduct that presents a

serious potential risk of physical injury to another."  See 18

U.S.C. § 924(e)(2)(B)(ii).

In making this assessment, we again employ a categorical

approach, "comparing the elements of the state crime against the

residual otherwise clause . . . supplementing that comparison only

with the information" from the permissible documents discussed

above.  United States v. Holloway, 630 F.3d 252, 260 (1st Cir.

2011) (citing United States v. Giggey, 551 F.3d 27, 29 (1st Cir.

2008) ("Giggey I")).  To fit within the ACCA's residual clause, the

predicate "offense at issue must:  (1) present a risk of physical

injury similar to the risk presented by the clause's enumerated

offenses and (2) be similar 'in kind' to those offenses."  Id.

(quoting Giggey I, 551 F.3d at 41-42).  An offense is "similar in

kind" to an enumerated offense if it "typically involve[s]

purposeful, violent and aggressive conduct."  Id. (citations and

_____

[8]The government's brief contains a parenthetical aside
suggesting that there are other sources showing that the crime did
not involve a vessel or ship.  If we were permitted to consider
such other sources, the government presumably would have made them
available.

-12-

internal quotation marks omitted); <u>see also</u> <u>United States</u> v. <u>Peterson</u>, 233 F.3d 101, 110 (1st Cir. 2000) (refusing to include within ACCA residual clause Rhode Island breaking and entering statute that lacked requirement of intent to commit a crime because "in order to fall under the 'otherwise' clause, a breaking and entering offense must contain elements truly comparable to those of a burglary -- comparable enough that the offense poses an equivalent risk of physical injury.").

The government first suggests that affirmance is foreordained by <u>James</u> v. <u>United States</u>, 550 U.S. 192, 212-213 (2007). There, the Court held that the ACCA's residual clause encompassed attempted burglary of a dwelling under a Florida statute which included the dwelling's curtilage within its proscription.[9] The government also points to our decision in <u>United States</u> v. <u>Sanchez-Ramirez</u>, 570 F.3d 75 (1st Cir. 2009), where, applying <u>James</u>, we held that the defendant's prior Florida conviction for burglary of an unoccupied structure -- a church -- satisfied the elements of the ACCA residual clause. <u>Id.</u> at 83. As we noted in <u>Sanchez-Ramirez</u>, the Court in <u>James</u> based its holding on the observation that an attempt to enter a dwelling's curtilage -- defined as "an enclosed area surrounding a structure," 550 U.S. at 213 -- "requires both physical proximity to the structure and an

_____

[9]<u>James</u> also held that attempt crimes are not categorically excluded from the ACCA residual clause. 550 U.S. at 213. That issue is not presented by this case.

overt act directed toward breaching the enclosure [and thus] presents a serious potential risk that violence will ensue and someone will be injured." Sanchez-Ramirez, 570 F.3d at 83 (citation and internal quotation marks omitted). The Court in James further noted that the injury risk stemmed from the possibility that an innocent person might appear while the crime was in progress or from a confrontation with police or bystanders who might investigate. Id. (citing James, 550 U.S. at 203). Building on these factors, we ultimately concluded that the risks to persons identified by the Court in James in relation to a dwelling-curtilage burglary, were equally present in Sanchez-Ramirez's structure-curtilage burglary. Id.

Here, although the Massachusetts statutes include the requisite specific intent to commit a felony, see Peterson, 233 F.3d at 108, we must operate under the premise that the elements of the asserted predicate do not necessarily include either a dwelling or other structure, unlike the predicate crimes in James and Sanchez-Ramirez. Additionally, given the dearth of available Shepard documents, we cannot assume that Farrell was convicted under Mass. Gen. Laws ch. 266, § 17, which requires that a person "be put in fear," and not section 18, which lacks the "put in fear" element. See Holloway, 630 F.3d at 259 (holding that government bears burden of showing that defendant was convicted of violent variety of Massachusetts assault and battery); cf. Giggey II, 589

-14-

F.3d at 42 (noting that defendant's state court guilty plea left no uncertainty as to which of several possible burglary offenses was at issue in assessing whether the predicate offense was a "crime of violence" under Sentencing Guidelines career offender provision).[10] In this light, James and Sanchez-Ramirez are of limited utility to the government's position. The government asks us to find that the completed breaking-and-entering in this case involved a level of risk comparable to generic burglary, as James found when comparing attempted burglary to burglary simpliciter. The gist of the argument is that, as was observed in James and Sanchez-Ramirez, in each case there is a realistic possibility that a perpetrator will be interrupted and violence will ensue. But such an argument could be applied to almost any crime in which "getting caught in the act" escalates the potential for violence. We require a more fine-toothed approach. See Holloway, 630 F.3d at 260-62 (analyzing ACCA implications of Massachusetts reckless battery statute). Applying the now-established approach, we conclude that Farrell's conviction does not come within ACCA's residual clause.

---

[10]See United States v. Willings, 588 F.3d 56, 58 n.2 (1st Cir. 2009) (observing that "crime of violence" under Guidelines and "violent felony" under the ACCA are nearly identical in meaning and that decisions construing one inform the construction of the other). This symbiosis, however, does not necessarily extend to analysis of burglaries, because the guideline definition is narrower, including only dwelling burglary among its enumerated offenses. Id.; U.S.S.G. § 4B1.2(a)(2).

We have not previously directly addressed the precise issue that we face here: whether breaking and entering a ship or vessel in the daytime is within the ACCA's residual clause. But a case decided while this appeal has been pending portends with unmistakable clarity our answer to the question. In United States v. Brown, 631 F.3d 573 (1st Cir. 2011), we held that burglary of a non-dwelling building under Massachusetts' night-time breaking and entering statute did not qualify as a "crime of violence" under the Sentencing Guidelines' career offender provision.[11] We observed that, while burglary of a non-dwelling building is "comparable in kind to one of the listed offenses (burglary of a dwelling) . . . we do not think that the risks of burglary of a 'building' -- at least given Massachusetts' broad definition -- are comparable to burglary of a 'dwelling,' . . ." Id. at 579. Specifically, we noted that while dwellings are regularly occupied and thus create the risk of night-time surprise encounters that could lead to violence, "the reality is that many buildings are wholly unoccupied at night. . . . [T]he Massachusetts statute covers a wide range of structures like storage sheds or detached garages where one might rarely encounter someone else at night." Id.

---

[11]Although the statute, Mass. Gen. Laws. ch. 266, §16, included ships and vessels within its proscriptions, the parties in Brown agreed that the alleged predicate involved a non-dwelling building. Brown, 631 F.3d at 578-79.

It must be acknowledged that Brown is not on all fours with this case. There are differences between the offenses enumerated in the ACCA (at issue here) and those in the career offender guideline that we analyzed in Brown. See supra, n.10. Moreover, in the present case we review only for plain error -- as opposed to Brown's de novo standard. And the substance of the interpretive issues is also not identical. Specifically, whereas in Brown the comparison was between breaking and entering into a non-dwelling building in the night-time and burglary of a dwelling, here we must determine whether daytime breaking and entering into a non-structure, such as a vessel or a ship, is comparable in kind and in degree of risk to generic burglary of a building. But ultimately those differences are immaterial to our analysis; similarly to our holding in Brown, we conclude that the predicate crime in this case and generic burglary are insufficiently congenerous.

In reaching this conclusion, we turn to the construction of Massachusetts law rendered by the Commonwealth's courts. Holloway, 630 F.3d at 259. In assessing the violent or aggressive nature of the predicate, Giggey I, 551 F.3d at 41-42, we note that conduct that constitutes the element of "breaking" includes opening a closed but unlocked door or window. See Commonwealth v. Lewis, 191 N.E.2d 753, 756 (Mass. 1963). Also, "entering" is satisfied by "some portion of the defendant's hand or arm" coming within the

-17-

house.  Commonwealth v. Moore, 741 N.E.2d 86, 89 (Mass. App. Ct.) (citing Lewis, 191 N.E.2d at 756), review denied, 751 N.E.2d 419 (2001).  Conduct that satisfies these elements does not strike us as being typically "violent or aggressive," Giggey I, 551 F.3d at 41-42, and violence is not necessarily a hallmark of breaking-and-entering convictions in the Massachusetts cases.  See, e.g., Maher v. Justices of the Quincy Div. of the Dist. Ct. Dept., 855 N.E.2d 1106, 1107 (Mass. App. Ct. 2006) (noting a municipal employee's conviction under Mass. Gen. Laws. ch 166 § 18 for breaking into a personnel office on a Saturday to view and pilfer file documents).

As we noted in Brown, "buildings" under Massachusetts law include "detached garages and storage facilities . . . that may invite theft of property, but would rarely expose individuals to violence."  631 F.3d at 579.  The same rationale applies with even more force to the "ship or vessel" potentially at issue here.  As in Brown, "[i]f [Farrell] had been tried for  . . . 'armed' burglary . . . this would be a different case."  Id. at 580.  Similarly, if theft of the vessel itself were an element, or the Shepard documents revealed that the charge included the "person put in fear" element, the calculus might lead to a different result.

The government asks us to follow cases from two circuits in which predicate burglaries have been classified as violent felonies under the ACCA residual clause where the relevant statutes included non-structures such as tents or watercraft within their

-18-

ambit. We are not persuaded that those cases should inform the analysis in this one. In United States v. Scoville, 561 F.3d 1174 (10th Cir. 2009), the court found that violation of two Ohio burglary statutes posed risks of injury or violence that were similar in kind to generic burglary due to their requirements that persons be present or that the structures be occupied or adapted for overnight accommodation. Id. at 1180-81. The Massachusetts statutes at issue in this case, however, do not require the presence of similar conditions.

The government also relies on United States v. Mayer, 560 F.3d 948 (9th Cir. 2009), in which the court held that Oregon's first degree burglary statute fell within the ACCA residual clause. Unlike the statutes at issue here, however, the Oregon law limits its application to either dwellings or "structure[s] adapted for overnight accommodation of persons or for carrying on business therein." Id. at 959. Additionally, conviction under the Oregon statute requires being armed with a weapon or other dangerous object, use of a dangerous weapon, or causing or attempting to cause physical injury. Id. Finally, the remaining case relied on by the government, United States v. Terrell, 593 F.3d 1084 (9th Cir.), reh'g denied, 621 F.3d 1154 (2010), cert. denied, 131 S. Ct. 2094 (2011), is similarly distinguishable because the relevant state burglary statutes at issue there limited their reach to

structures adapted for residential use, business use, or overnight stay.  Id. at 1091-92.

Against this backdrop, and given the limited scope of Shepard-permissible evidence, we conclude that the district court necessarily erred in finding that Farrell's 1980 Massachusetts breaking-and-entering conviction was a violent felony within the meaning of the ACCA.

Having determined that the first prong of the plain error test is met, we turn to the second requirement: that the error be "obvious and clear under current law."  United States v. Newell, 658 F.3d 1, 28 (1st Cir.), cert. denied, 132 S. Ct. 430 (2011).  We have said that "current law" means the law at the time of appellate consideration, United States v. Antonakopoulos, 399 F.3d 68, 77 (1st Cir. 2005), but there is some debate over whether that rule applies when the law was unsettled at the time of trial.  In Johnson v. United States, 520 U.S. 461, 468 (1997), the Supreme Court established that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration."  The Court, however, left open the question of whether plain error would be established where the law was unsettled at the time of trial, and subsequently clarified while the appeal was pending.  The circuits are divided on this issue. Some have deemed Johnson a narrow exception to the rule that error

is plain only if it was clear at the time of a district court's decision. See, e.g., United States v. Mouling, 557 F.3d 658, 663-64 (D.C. Cir. 2009); United States v. Turman, 122 F.3d 1167, 1170 (9th Cir. 1997); United States v. David, 83 F.3d 638, 643 (4th Cir. 1996). Others have held that "the time of appellate consideration" standard applies regardless of the law's clarity at the time of trial. See, e.g., United States v. Smith, 402 F.3d 1303, 1315 n.7 (11th Cir. 2005), vacated on other grounds by 545 U.S. 1125 (2005); United States v. Cordery, 656 F.3d 1103, 1106 (10th Cir. 2011); United States v. Ross, 77 F.3d 1525, 1539-40 (7th Cir. 1996); United States v. Cosgrove, 637 F.3d 646, 656-57 (6th Cir. 2011); United States v. Gamez, 577 F.3d 394, 400 (2d Cir. 2009) (per curiam).

We subscribe to the latter view: the plainness of the error should be evaluated at the time of appellate consideration, regardless of whether the law at the time of trial was settled and clearly contrary to the law at the time that the appeal is considered, or whether the law was unsettled at the time of trial.

This approach is consistent with the principles undergirding the forfeiture doctrine, and the stringency of its accompanying plain error standard of review. Plain error review is not a vehicle for gauging the magnitude of the district court's mistake; rather, it functions as a limitation on the appellate court's discretion. We do not correct forfeited errors that are

questionable or inconsequential, but only those that are "plain" and "affect substantial rights."  See United States v. Laboy-Delgado, 84 F.3d 22, 31 n.9 (1st Cir. 1996).  In other words, the focus of plain error review should be "whether the severity of the error's harm demands reversal," and not "whether the district court's action . . . deserves rebuke." United States v. Ross, 77 F.3d 1525, 1539-40 (7th Cir. 1996).  When viewed as a restriction on our discretion, rather than as a measure of district court fault, it is clear that the "plainness" inquiry must be undertaken from the vantage of the appellate court.  See id.  Moreover, as a matter of practice, assessing the plainness of error at the time of appellate consideration allows the reviewing court to avoid the elusive and potentially onerous case-by-case determination of whether the law was "settled" or "unsettled" at the time of trial. Smith, 402 F.3d at 1315 n.7.

Accordingly, we need not consider whether the law at the time of Farrell's sentencing was merely unsettled or was clearly contrary to the law as it stands now.  The question here is whether our intervening decision in Brown makes the error in this case clear and obvious at the present time.  We hold that it does.

We have pointed out the differences between Brown and Farrell's sentencing:   there, we construed the Sentencing Guidelines -- here, the ACCA; there, the distinction was between burglary of a dwelling and nighttime breaking and entering a non-

-22-

dwelling building -- here, it is between a building and a vessel. But to describe those differences is to answer the question. As we concluded in determining that there was error, if breaking and entering a building at night is not similar in kind and does not pose a degree of risk similar to burglary of a dwelling, then neither can breaking and entering a vessel be similar in kind to, nor pose a degree of risk similar to, burglary of a building.

If only because of the differences between the physical characteristics of a vessel and a building, and the general ability to observe whether anyone is aboard a vessel, happening upon a person is far less likely to take place while breaking and entering a vessel than it is while burglarizing a building. Cf. Mass. Gen. Laws ch. 90B § 1 (2009) (in statute regulating motorboats, other vessels and recreational vehicles, "vessel" means "watercraft of every description, except a seaplane on the water used or capable of being used as a means of transportation on water"); Barker v. Fairhaven, 163 N.E. 901, 902 (Mass. 1928) (as used in tax statutes, "vessel" is a "craft for navigation on the water and larger than a common rowboat"; "ships" are vessels that are not "propelled by oars, paddles or the like"). While not all vessels are so easily distinguished from buildings, we are concerned here with the scope of the statute and the likelihood of physical injury, not simply with whether subclasses of vessels exist. See Brown, 631 F.3d at 579 (the statute "covers a wide range of structures . . . where one

-23-

might rarely encounter someone else" and "would rarely expose individuals to violence").  After Brown, it is plain that reliance on the 1980 Massachusetts conviction was error.

Finally, in this case, the prejudice and unfairness prongs of the plain error doctrine may be addressed summarily.  The government makes no argument with respect to them, and both the mandatory minimum sentence of imprisonment for fifteen years under the ACCA and the career offender determination under the Guidelines were arrived at in reliance on the error.  No more need be said.

### III.

We remand for resentencing consistent with this opinion.[12]

---

[12]In light of our disposition of this issue, we do not address the ineffective assistance of counsel claim.  Farrell also posits that his sentence violates the Fifth and Sixth Amendments because a jury did not find, beyond a reasonable doubt, that he had the requisite predicate felonies.  We have repeatedly rejected this attempt to avoid the Supreme Court's holding in Almendarez-Torres v. United States, 523 U.S. 224 (1998), and do so again here.  See United States v. Goncalves, 642 F.3d 245, 255 (1st Cir. 2011) (and cases cited therein).