# United States Court of Appeals
## For the First Circuit

No. 11-1773

UNITED STATES OF AMERICA,

Appellee,

v.

MIKE K. JONAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Thompson, Selya and Dyk,*
Circuit Judges.

Lenore Glaser, with whom Law Office of Lenore Glaser was on brief, for appellant.
Cynthia A. Young, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

August 8, 2012

_____
*Of the Federal Circuit, sitting by designation.

**SELYA, Circuit Judge.** Defendant-appellant Mike K. Jonas argues that, for the purpose of determining the applicability of the definition of "crime of violence" contained in the career offender guideline, USSG §4B1.2(a), any use of his Massachusetts conviction for assault and battery on a correctional officer (ABCO), Mass. Gen. Laws ch. 265, § 13D, is foreclosed by the rationale of our prior decision in United States v. Holloway, 630 F.3d 252 (1st Cir. 2011). The government demurs, arguing that we should apply the rationale of our post-Holloway decision in United States v. Dancy, 640 F.3d 455 (1st Cir. 2011). The district court agreed with the government, and so do we.

The relevant facts are susceptible to a succinct summary. In the court below, the defendant pleaded guilty to two counts: possessing counterfeit securities and possessing a firearm as a felon. 18 U.S.C. §§ 513(a), 922(g)(1). The revised presentence investigation report recommended a guideline sentencing range (GSR) of 70 to 87 months. This calculation was driven, in part, by a provision in the federal sentencing guidelines calling for an increased base offense level if a defendant who is convicted of unlawful firearm possession has previously "sustain[ed] at least two felony convictions of either a crime of violence or a controlled substance offense." USSG §2K2.1(a)(2). For this purpose, the guideline cross-references to USSG §4B1.2(a) to supply

-2-

the definition for a "crime of violence." USSG §2K2.1, comment. (n.1).

At the disposition hearing, the defendant conceded that he had a prior drug conviction that constituted a predicate felony under the career offender guideline. He argued, however, that the second predicate felony relied upon by the government — his conviction for ABCO — was not a conviction for a crime of violence and, thus, could not qualify as the essential second predicate. The district court concluded that ABCO was properly classified as a crime of violence, applied section 2K2.1(a)(2), and — after varying downward from the GSR, see 18 U.S.C. § 3553(a) — imposed a 60-month incarcerative term. This timely appeal ensued.

This is a rifle-shot appeal: it turns exclusively on the scope of the phrase "crime of violence" as that phrase is used in the federal sentencing guidelines. This question engenders de novo review. United States v. Williams, 529 F.3d 1, 3 (1st Cir. 2008).

Under the career offender guideline, a crime of violence is any offense punishable by more than one year of imprisonment that either "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." USSG §4B1.2(a). This definition is nearly identical to the definition of a "violent

-3-

felony" contained in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B). Recognizing this resemblance, courts consistently have held that decisions construing one of these phrases generally inform the construction of the other. See, e.g., Holloway, 630 F.3d at 254 n.1; United States v. Richards, 456 F.3d 260, 263 n.2 (1st Cir. 2006). Consequently, we refer to both bodies of jurisprudence seamlessly.[1] See United States v. Hart, 674 F.3d 33, 41 n.5 (1st Cir. 2012); United States v. Willings, 588 F.3d 56, 58 n.2 (1st Cir. 2009).

Under binding Supreme Court precedent, we must take a categorical approach to the question of whether a crime ranks as a crime of violence. See Sykes v. United States, 131 S. Ct. 2267, 2272 (2011). Our focus is on the elements of the offense as delineated in the statute of conviction (as judicially glossed) and the standard charging language. See Johnson v. United States, 130 S. Ct. 1265, 1269-70 (2010); Dancy, 640 F.3d at 468. This paradigm requires that we eschew consideration of the offender's particular conduct. See Sykes, 131 S. Ct. at 2272; James v. United States, 550 U.S. 192, 202 (2007).

---

[1] This congruence between "crime of violence" and "violent felony" is especially important here. The key precedents upon which the parties rely (Holloway and Dancy) are both cases involving whether or not a particular offense constitutes a violent felony under the ACCA. The reasoning of those cases is fully transferrable to the precincts patrolled by the career offender guideline.

Under the relevant Massachusetts statute, assault and battery can be committed in various ways — some that may involve the use of violent force and some that may not. See Holloway, 630 F.3d at 254-60. Thus, the specification set out in section 4B1.2(a)(1), sometimes called the "force clause," Hart, 674 F.3d at 41, is not categorically applicable. See Holloway, 630 F.3d at 254-60. Assuming, favorably to the defendant, that simple assault and battery and assault and battery on a correctional officer are analyzed in the same way for purposes of the force clause — and the government has not suggested the contrary — for ABCO to be regarded categorically as a crime of violence, it must fit within the "otherwise clause" of the definition set out in the career offender guideline. So viewed, the putative predicate must be an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." USSG §4B1.2(a)(2).

To qualify as a crime of violence under the otherwise clause, an offense must "(1) present a degree of risk similar to the degree of risk posed by the enumerated offenses, and (2) be roughly similar in kind to the enumerated offenses." Hart, 674 F.3d at 41 (citing Begay v. United States, 553 U.S. 137, 143 (2008)). With respect to the first of these criteria (degree of risk), "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." James, 550 U.S. at

208. This determination hinges on a commonsense assessment of the risk of violence that typically ensues during the commission of the crime. See Sykes, 131 S. Ct. at 2273-74; James, 550 U.S. at 203-07.

With respect to the second criterion (similar in kind), offenses that involve stringent mens rea requirements are easily captured. See Sykes, 131 S. Ct. at 2275-76; United States v. Grupee, 682 F.3d 143, 149 (1st Cir. 2012) (Souter, J.). Strict liability, negligence, or recklessness crimes are more elusive. See Sykes, 131 S. Ct. at 2275-76; Begay, 553 U.S. at 144-46.

The Supreme Court has crafted a touchstone for the similar in kind inquiry: courts must ask whether, categorically speaking, putative predicate offenses "involve[] purposeful, violent, and aggressive conduct." Williams, 529 F.3d at 7 (citing Begay, 553 U.S. at 144-45). This question is sometimes difficult to answer. "Adjectives like 'purposeful' and 'aggressive' denote qualities that are ineluctably manifested in degree and appear in different combinations; they are, therefore, imprecise aids." Id. Mindful of this inherent imprecision, we have emphasized that an offense need only be "'roughly similar' in kind to the enumerated offenses." Dancy, 640 F.3d at 468 (quoting Begay, 553 U.S. at 143).

In the case at hand, the defendant concedes that he was charged with, and convicted of, ABCO. He argues, however, that

-6-

ABCO fails both the degree of risk and similar in kind requirements. Determining whether these requirements are satisfied is a matter of federal law. See United States v. Giggey, 551 F.3d 27, 39 (1st Cir. 2008) (en banc).

We start with the similar in kind inquiry. The defendant's argument is straightforward. It depends on Holloway, in which we held that "because the Massachusetts simple assault and battery statute covers multiple offenses, at least one of which, reckless battery, is categorically not a violent felony, a court may only rely on an assault and battery conviction if it can ascertain that the defendant was convicted of the violent form of the offense (e.g., harmful battery)." 630 F.3d at 262.[2] The defendant notes that there is nothing in the charging language that indicates how he committed ABCO. Building on this foundation, he maintains that ABCO, if committed recklessly, is no different than the simple assault and battery offense that Holloway determined did not qualify as a violent felony. See id. (discussing Mass. Gen. Laws ch. 265, § 13A). As he sees it, the mere fact that an assault

_____

[2] Under Massachusetts law, simple assault and battery is a lesser included offense of assault and battery on a public employee. See Commonwealth v. Colon, 958 N.E.2d 56, 68 (Mass. App. Ct. 2011); Commonwealth v. Rosario, 430 N.E.2d 866, 866 (Mass. App. Ct. 1982). Both assault and battery on a correctional officer and assault and battery on a police officer are species of the broader crime of assault and battery on a public employee. See Mass. Gen. Laws ch. 265, § 13D.

and battery is committed on a particular type of person (e.g., a correctional officer) does not transmogrify the act.

Holloway, however, cannot be read in a vacuum. In Dancy, 640 F.3d at 467-70, decided a few months after Holloway, we distinguished simple assault and battery, Mass. Gen. Laws ch. 265, § 13A, from assault and battery on a police officer (ABPO), id. § 13D. We explained that, under the Massachusetts statute, ABPO requires the prosecution to prove three elements in addition to those needed for simple assault and battery: that the victim was a police officer, that he was acting in his official capacity, and that the defendant knew as much. See Dancy, 640 F.3d at 468; accord Mass. Gen. Laws ch. 277, § 79 (setting forth standard charging language); Commonwealth v. Colon, 958 N.E.2d 56, 68 (Mass. App. Ct. 2011). We then concluded that even under a recklessness theory of assault and battery liability, the additional elements required for an ABPO conviction ensure that "purposeful conduct is the norm," making ABPO sufficiently similar in kind to the enumerated offenses to qualify as a violent felony. Dancy, 640 F.3d at 466-69 (citing with approval United States v. Fernandez, 121 F.3d 777, 779-80 (1st Cir. 1997), for the proposition that ABPO is a categorical crime of violence).

Dancy is the beacon by which we must steer. The text of Mass. Gen. Laws ch. 265, § 13D is generic in nature, proscribing assault and battery on a "public employee." It "is separate and

distinct from the statute criminalizing simple [assault and battery]." Dancy, 640 F.3d at 468. It applies in exactly the same way to police officers, see Colon, 958 N.E.2d at 68, as to correctional officers, see Commonwealth v. Ford, 468 N.E.2d 663, 665 (Mass. App. Ct. 1984). And even though the Massachusetts Supreme Judicial Court has not definitively set out the elements required for ABCO under section 13D, there is no principled basis for believing that the elements are any different than the elements set out for ABPO. Cf. Commonwealth v. Deschaine, 932 N.E.2d 854, 861 (Mass. App. Ct. 2010) (explaining that a conviction for assault and battery on a correctional officer under Mass. Gen. Laws ch. 127, § 38B requires the Commonwealth "to prove the defendant knew that the person he struck was a correction officer."). Indeed, the defendant appears to concede that the elements of ABCO parallel those of ABPO. See Appellant's Br. at 6 ("The crime of assault and battery on a correctional officer adds, as an element of the offense, that the victim was a correctional officer, known to the defendant as such, and acting in his or her official capacity.").

As in ABPO, the additional elements of ABCO — that the victim was a correctional officer, that he was acting in an official capacity, and that the defendant knew as much — ensure that "purposeful conduct is the norm." See Dancy, 640 F.3d at 468-70. This means, then, that ABCO — like ABPO — is roughly similar

-9-

in kind to the offenses enumerated in connection with the "otherwise" clause of section 4B1.2(a)(2).

The defendant's fallback position is that ABCO presents a substantially lesser degree of risk than ABPO and, therefore, falls below the level of risk presented by the enumerated offenses. The defendant contends that, unlike police officers, correctional officers are usually unarmed and interact informally with prisoners. This contention rings hollow.

The proper comparison in a degree of risk analysis is between the risks typically accompanying the offense of conviction and the risks typically accompanying the offenses enumerated in connection with the "otherwise" clause of the career offender guideline. See Hart, 674 F.3d at 41. Such a comparison guides the requisite determination as to whether categorically speaking a particular offense "presents a serious potential risk of physical injury to another." Sykes, 131 S. Ct. at 2273; see James, 550 U.S. at 203. By its very nature, this is an "inherently probabilistic" analysis. Dancy, 640 F.3d at 470 (internal quotation marks omitted).

We have little difficulty in concluding that ABCO typically presents a serious potential risk of injury to another that is not only comparable to, but arguably greater than, the risks typically associated with the offenses enumerated in connection with the "otherwise" clause of the career offender

-10-

guideline.  We previously have held that assault on a prison guard, by its nature, presents a serious risk of injury to another.[3]  See United States v. Gignac, 119 F.3d 67, 69 (1st Cir. 1997). "'Prisons are inherently dangerous institutions,' where prison guards are greatly outnumbered by inmates — many of whom have a history of violence or of aggressive tendencies."  United States v. Johnson, 616 F.3d 85, 94 (2d Cir. 2010) (citation omitted) (quoting Lewis v. Casey, 518 U.S. 343, 391 (1996)); accord Johnson v. California, 543 U.S. 499, 515 (2005); Hudson v. Palmer, 468 U.S. 517, 526 (1984).  "Guards and inmates co-exist in direct and intimate contact.  Tension between them is unremitting."  Wolff v. McDonnell, 418 U.S. 539, 562 (1974).

Moreover, a degree of risk analysis must take into account the dangers that third parties are likely to create.  See Williams, 529 F.3d at 5-8.  Assault and battery on a correctional officer (even an unarmed correctional officer) is like throwing a lit match into a tinder box: it inevitably "creates a risk that fellow inmates will join in the disturbance, oppose it with force, or simply use its occurrence to engage in other acts of violence."

---

[3] To be sure, neither the Massachusetts statutes nor the case law requires that a correctional officer work in a prison.  But "[i]t need not be the case that 'every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony.'" Dancy, 640 F.3d at 470 (quoting James, 550 U.S. at 208).  In the ordinary course, correctional officers work at correctional facilities, so the categorical approach directs our attention to that environment.

Johnson, 616 F.3d at 94.  The setting is the key: "[t]he risk of physical injury arises not only from this confrontation, but also from the fact that prisons are like powder kegs, where even the slightest disturbance can have explosive consequences."  Id.

To say more would be to paint the lily.  Common sense dictates that ABCO, categorically speaking, presents a sufficiently serious potential risk of injury to another to satisfy the degree of risk requirement.  It is, moreover, sufficiently similar in kind to the offenses enumerated in connection with the "otherwise" clause of the career offender guideline.  Under the categorical approach, no more is exigible.

We need go no further.  For the reasons elucidated above, we hold that the claim of sentencing error is without merit.

**Affirmed**.