# United States Court of Appeals
## For the First Circuit

Nos. 11-2416, 11-2417

UNITED STATES OF AMERICA,

Appellee,

v.

RIGOBERTO RAMÍREZ,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella, Howard, and Thompson,
Circuit Judges.

Charles W. Rankin, with whom Audrey M. Grace and Rankin & Sultan were on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

February 27, 2013

**THOMPSON**, **Circuit Judge**.  An investigation of gang-related drug trafficking by the Federal Bureau of Investigation ("FBI") led to the arrest of Appellant Rigoberto Ramírez ("Ramírez"), a key supplier of crack cocaine in his community in Chelsea, Massachusetts.  Ramírez was indicted, pled guilty to one count of conspiracy to distribute crack cocaine and two counts of distribution of crack cocaine, and received a thirteen-year sentence.  Ramírez now challenges his sentence on both substantive and procedural grounds, claiming that his prior felony conviction did not warrant the career offender enhancement and that the district court erred in denying his request for resentencing and failing to adequately explain the reasons for his sentence.  After careful review, we remand to the district court for further consideration.

## BACKGROUND

### The Drug Deals

Beginning sometime in 2009, an FBI gang task force began investigating drug trafficking by suspected gang members operating in Chelsea, Massachusetts.  Ramírez and co-defendant Paul Rodriguez became targets of that investigation.  Ramírez, although not a gang member himself, was considered a significant source of the crack cocaine business in Chelsea and used gang members to facilitate it.  One of those gang members was Rodriguez, a member of "Neta," a

violent prison gang whose members retain their allegiance after release from prison.

There were two drug deals that eventually gave rise to the federal charges against Ramírez. The first happened in June 2009 when Ramírez and Rodriguez sold 1.5 grams of crack cocaine to a cooperating witness ("CW") in a Walgreens parking lot. The second occurred the following month when Ramírez sold the same CW three more grams of crack cocaine. During that transaction, the CW handed the money used to purchase the drugs to a male passenger, named "BR," who was under 18 years old and sitting in the front passenger seat. BR counted the money to confirm it was the correct amount for the drugs purchased.

### The Indictment

In January 2010, a federal grand jury in Massachusetts indicted Ramírez on one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846 (Count I), and two counts of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Counts II & IV). Count IV of the indictment added that Ramírez knowingly and intentionally employed, hired, used, persuaded, induced and enticed a person under 18 years of age to violate § 841(a)(1). Following the indictment, Ramírez was arrested and entered a plea of not guilty. A little over a year later, he pled guilty to all charges (more on the change-of-plea hearing later).

**Sentencing**

The pre-sentence report ("PSR") first determined that the offense level was 15.[1] That offense level, combined with Ramírez's criminal history points (placing him in category V) would have set the Sentencing Guidelines (the "Guidelines") range at 37 to 46 months. The PSR, however, further determined that Ramírez should receive an enhanced sentence as a career offender under § 4B1.1. The PSR based the career offender enhancement on two prior convictions that -- according to the PSR -- satisfied the definition of a "crime of violence" set forth in § 4B1.2(a): a 1993 Massachusetts conviction for manufacturing, distributing, or dispensing a Class A substance in a drug-free school zone, and a 1997 Florida conviction for burglary of a dwelling. Applying the enhancement, the PSR explained that § 4B1.1 directs the offense level be determined by the statutory maximum for the offenses of conviction and that the statutory maximum in this case was forty years (or twice the otherwise applicable statutory maximum penalty of twenty years) because Ramírez used a juvenile in violation of 21 U.S.C. § 861. The career offender total offense level of 34 was reduced by three levels under U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility resulting in a career offender total

---

[1]Ramírez's base offense level ("BOL") was 18 under U.S.S.G. § 2D1.1(c)(11), but was reduced to 15 after factoring in the reduction of three levels under § 3E1.1(a) and (b) for acceptance of responsibility.

offense level of 31. According to the PSR, a total offense level of 31 and a career offender criminal history category of VI set the guidelines range at 188 to 235 months.[2]

When it came time for sentencing, Ramírez objected that burglary of a dwelling under Florida law did not qualify as a "crime of violence" under the career offender guideline to warrant a sentence enhancement. Ramírez further objected to any sentence enhancement under 21 U.S.C. § 861(b) for use of a person under 18 since he did not admit at the change-of-plea hearing that he knew BR was a minor. Lastly, Ramírez claimed the crime of violence provision's residual clause, § 4B1.2(a)(2), was unconstitutionally vague.[3]

At sentencing, the district court concluded that Ramírez's Florida burglary of a dwelling conviction qualified as a "crime of violence" under § 4B1.1. The district court adopted the

---

[2]Once a defendant is classified as a career offender under § 4B1.1(a), his "criminal history category in every case" is elevated to the highest category, Category VI. U.S.S.G. § 4B1.1(b).

[3]As discussed further below, a prior conviction may qualify as a crime of violence under § 4B1.2(a) if it is an "offense under federal or state law, punishable by imprisonment for a term exceeding one year, that - (1) has as an element the use, attempted use, or threatened use of physical force against a person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). We have referred to the clause after the enumerated offenses as the "residual" or "otherwise" clause. United States v. Holloway, 630 F.3d 252, 256, 260 (1st Cir. 2011).

PSR's calculations, finding that Ramírez's career offender total offense level was 31 and his career offender criminal history category was VI, resulting in a Guidelines sentencing range of 188 to 235 months.  The district court sentenced him to thirteen years imprisonment (or 156 months) and six years of supervised release.

### Post-Sentencing

After sentencing, Ramírez moved to correct the judgment and for resentencing, arguing that because the district court credited Ramírez's statement at the change-of-plea hearing that he did not know BR was a minor, the enhancement under 21 U.S.C. § 861(b) should not apply.  Without the enhancement, Ramírez argued, the correct guidelines sentencing range was 151 to 188 months, the term of supervised release should be reduced from six to three years, and resentencing was warranted.  The court agreed in part with Ramírez.  The district court reduced the term of supervised release to three years, but ruled that "there is no need for resentencing."  With the exception of the reduction in the term of supervised release, the sentence remained unchanged.  Ramírez now appeals.

### DISCUSSION

### Prior Offense as a "Crime of Violence"

Ramírez first contends that burglary of a dwelling does not qualify as a "crime of violence" under § 4B1.2(a) of the Guidelines.  We review de novo the classification of a prior

offense as a crime of violence under the Guidelines. United States v. Small, 640 F.3d 425, 426 (1st Cir. 2011).

To determine whether a defendant's prior crime qualifies as a crime of violence, we take a categorical approach. See, e.g., United States v. Jonas, 689 F.3d 83, 86 (1st Cir. 2012) (citing Sykes v. United States, ___ U.S.___, 131 S.Ct. 2267, 2272 (2011)). Our focus is on "the legal definition of the crime and not the defendant's particular conduct in committing the offense." United States v. Davis, 676 F.3d 3, 7 (1st Cir. 2012). We first identify the offense of conviction and look to see whether the statutory definition of that offense meets the requirements of the Guidelines' definition of a "crime of violence" under § 4B1.2(a). Davis, 676 F.3d at 8; United States v. Brown, 631 F.3d 573, 577 (1st Cir. 2011).

The career offender designation applies to one who, being 18 or older at the time of the offense, commits a felony that is either a drug offense or a "crime of violence" and who has at least two other such convictions. U.S.S.G. § 4B1.1(a). A "crime of violence" is any offense "punishable by imprisonment for a term exceeding one year, that- (1) has as an element the use, attempted use, or threatened use of physical force against a person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

-7-

Id. § 4B1.2(a). Thus, to qualify as a crime of violence, Ramírez's prior offense must contain an element of the threat or use of force, be one of the enumerated offenses, or fall within the residual clause. See id.; United States v. Giggey, 551 F.3d 27, 33 (1st Cir. 2008) (en banc) ("Giggey I").

At the time of Ramírez's 1997 burglary of a dwelling conviction, Florida defined "burglary" as "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." Fla. Stat. § 810.02(1)(1997). "Dwelling" means "a building or conveyance of any kind . . . whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof." Id. § 810.011(3).

Because burlgary of a dwelling under Florida law has no element related to the threat or use of physical force, it does not qualify as a crime of violence under U.S.S.G. § 4B1.2(a)(1). We thus turn to whether Ramírez's conviction can be classified as a crime of violence under the enumerated "burglary of a dwelling" offense under § 4B1.2(a)(2). While Ramírez does not dispute that he was convicted of burglarizing a dwelling, he argues that Florida's definition of burglary of a dwelling is broader than

"generic burglary" as defined by the Supreme Court in <u>Taylor</u> v. <u>United States</u>, 495 U.S. 575, 602 (1990).

<u>Taylor</u> interpreted the term "burglary" as it is used in the enumerated offense clause of the "violent felony" provision under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). 495 U.S. at 597-99.[4] The definition of "burglary," the Court said, should not be derived from the common-law because the "contemporary understanding of 'burglary' has diverged a long way from its common-law roots." <u>Id.</u> at 593. In the Court's view, "Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States," but the term "must have some uniform definition independent of labels employed by the various States' criminal codes." <u>Id.</u> at 592, 598. The Court thus concluded that "the generic, contemporary meaning of burglary" is "the unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." <u>Id.</u> at 598. <u>Taylor</u> added that state burglary statutes which include within their reach places "other than buildings," such as automobiles cannot categorically be considered "generic burglary." <u>Id.</u> at 599. The Court said that an overly broad statute could

---

[4]We have repeatedly noted that the "substantial similarity" between the definition of "violent felony" for sentencing enhancement purposes under the ACCA and the definition of "crime of violence" under the Guidelines' career offender provision makes decisions "interpreting one phrase frequently . . . persuasive in interpreting the other [ ]." <u>United States</u> v. <u>Winter</u>, 22 F.3d 15, 18 n.3 (1st Cir. 1994).

nonetheless trigger an enhancement under the violent felony provision of the ACCA if the charging documents and certain other records establish the defendant was convicted of generic burglary. Id. at 602. Relying on Taylor, Ramírez argues that Florida's inclusion of curtilage and conveyances which could include cars and aircrafts in its definition of "dwelling," Fla. Stat. § 810.011(3), takes Florida's definition of burglary of a dwelling beyond Taylor's definition of generic burglary and cannot therefore constitute "burglary of a dwelling" under U.S.S.G. § 4B1.2(a)(2). Instead of rebutting that argument, the government assumes Taylor's definition applies.

We disagree that Taylor's strict definition of "generic burglary" automatically dictates the Guidelines' definition of "burglary of a dwelling." The Guidelines' definition of "crime of violence" and the ACCA's definition of "violent felony" are nearly identical, so authority construing one frequently informs the construction of the other. United States v. Willings, 588 F.3d 56, 58 n.2 (1st Cir. 2009). That is not always true, however. As we have emphasized, Taylor's interpretation of the term "burglary" as it is used in the ACCA must be "put in context." Giggey I, 551 F.3d at 35.[5] Taylor involved a question of congressional intent,

---

[5] Giggey I addressed Taylor's application to the Guidelines and held that whether a prior conviction for non-residential burglary is a "crime of violence" turns on the application of a categorical approach under § 4B1.2(a)(2)'s residual clause. Id. at 39-41.

-10-

not the Commission's intent, and did not mandate the Commission restrict the definition of "burglary of a dwelling," based on Taylor's definition of "generic burglary" under the ACCA. Giqqey I, 551 F.3d at 35-36. The Commission's decision to list the more limited "burglary of a dwelling" as an enumerated offense "instead of using the ACCA's broader term 'burglary' or even Taylor's 'generic burglary'" was "deliberate" and affects how we define "burglary of a dwelling" under the Guidelines. Id. at 33, 36; see United States v. Rivera-Oros, 590 F.3d 1123, 1129 (10th Cir. 2009) (noting that "[a]t least with respect to burglary, the Commission has reached a different conclusion than Congress did in enacting the ACCA" in finding Taylor's definition did not apply to the term "burglary of a dwelling" as used in the Guidelines); United States v. Murillo-Lopez, 444 F.3d 337, 342 (5th Cir. 2006) (finding that "Taylor interprets a federal statute" and "does not purport to define 'burglary of a dwelling' [or] . . . purport to govern the Guidelines," noting previous decisions interpreting "burglary of a dwelling" under the Guidelines without citation or reliance upon Taylor).[6] Because Taylor's definition of generic burglary does not strictly apply here, we must define "burglary of a dwelling" as the

---

[6]The Ninth Circuit has chosen a different approach, construing "'burglary of a dwelling' as the Taylor definition of burglary, with the narrowing qualification that the burglary occur in a dwelling." United States v. Wenner, 351 F.3d 969, 973 (9th Cir. 2003). Like the Tenth Circuit, see Rivera-Oros, 590 F.3d at 1133, we disagree that Taylor's strict definition applies.

-11-

term is used in the Guidelines.[7]  Only then may we consider whether

"the state statute corresponds in substance to the generic meaning

of [the enumerated offense]."  See Taylor, 494 U.S. at 599.[8]

While we have not been called upon to define "burglary of

a dwelling" in the Guidelines' context, at least four circuits have

taken on that task.  See Rivera-Oros, 590 F.3d at 1132;

Murillo-Lopez, 444 F.3d at 344-45; United States v. McClenton, 53

F.3d 584, 588 (3d Cir. 1995); United States v. Graham, 982 F.2d

_____

[7]The cases the government relies upon in assuming Taylor's
definition of generic burglary controls, involved the violent
felony provision under the ACCA which lists "burglary," not the
Guidelines' more limited "burglary of a dwelling" as an enumerated
offense.  See, e.g., United States v. Farrell, 672 F.3d 27, 32 (1st
Cir. 2012) (state statute's inclusion of ships or vessels in the
statute's definition of burglary goes beyond the confines of
"generic burglary" under Taylor); United States v. Sanchez-Ramírez,
570 F.3d 75, 82 n. 7 (1st Cir. 2009) (noting Florida's burglary
statute's inclusion of curtilage brings it outside "generic
burglary" as defined in Taylor and Shepard documents do not exclude
"non-generic" burglary).

[8]We, like many of our sister circuits, use Taylor's analytical
framework to determine whether a prior state conviction falls
within the generic definition of the enumerated offense to qualify
as a crime of violence under the Guidelines.  See, e.g., United
States v. Peterson, 629 F.3d 432, 436 (4th Cir. 2011) (applying
Taylor's categorical approach in defining generic "manslaughter" as
used in § 4B1.2(a) cmt. 1); United States v. Marrero, 677 F.3d 155,
165 (3d Cir. 2012) (applying Taylor's framework in adopting the
generic definition for "murder" under § 4B1.2(a) Application Note
1); United States v. Lockley, 632 F.3d 1238, 1242 (11th Cir. 2011)
(employing Taylor's approach in determining that Florida's
definition of robbery follows the generic definition of robbery
under the Guidelines to justify the sentencing enhancement); United
States v. Walker, 595 F.3d 441, 445-46 (2d Cir. 2010) (applying
Taylor to determine whether a state's robbery offense "corresponds
substantially to the 'generic meaning' of robbery" to qualify
"categorically as a 'crime of violence' for Guidelines enhancement
purposes").

-12-

315, 316 (8th Cir. 1992). Relying primarily on Black's Law Dictionary's definition of "dwelling," these courts have concluded that "dwelling" means an "enclosed space that is used or intended for use as a human habitation." Rivera-Oros, 590 F.3d at 1130-33 (looking to, inter alia, Black's Law Dictionary's definition of "dwelling," and the Commission's "heightened concern for harms associated with residential burglaries" in concluding "dwelling" is not limited to permanent, immovable structures); Murillo-Lopez, 444 F.3d at 343-45 (considering the Model Penal Code, LaFave treatise on criminal law, and Black's Law Dictionary); McClenton, 53 F.3d at 587-88 (applying Black's Law Dictionary "dwelling" definition and case law); Graham, 982 F.2d at 316 (relying on Black's Law Dictionary's "dwelling" definition); see also United States v. McFalls, 592 F.3d 707, 712-14 (6th Cir. 2010) (requiring human habitation in defining "dwelling")(citing Graham, McClenton and Murillo-Lopez). We agree that the generic definition of "dwelling" for the purposes of the enumerated "burglary of a dwelling" offense under the Guidelines, specifically § 4B1.2(a), must be an enclosed space for use or intended use for human habitation. See Rivera-Oros, 590 F.3d at 1132-33 (finding the definition of "dwelling" includes any "enclosed space that is used or intended for use as a human habitation"); Murrillo-Lopez, 444 F.3d at 345 (concluding "'burglary of a dwelling'" includes the

-13-

elements of generic burglary" under <u>Taylor</u> "but it also includes, at a minimum, tents and vessels used for human habitation").

We now turn to the Florida statute to determine whether it roughly corresponds to the generic definition of burglary of a dwelling. As previously mentioned, Florida's definition of burglary includes the "entering or remaining in a dwelling . . . with the intent to commit an offense therein." Fla. Stat. § 810.02(1)(1997). A "[d]welling," is any "building or conveyance . . . [which] is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof." <u>Id.</u> § 810.011(2).[9] The curtilage, however, need not be similarly designed for human habitation at night. While the statute neglects to define "curtilage," Florida courts have defined it as an area surrounding a residence which has "some form of an enclosure." <u>State</u> v. <u>Hamilton</u>, 660 So.2d 1038, 1044 (Fla. 1995). An enclosed yard surrounding a residence, for instance, qualifies as curtilage

---

[9]Florida's burglary statute does not define the term "lodging," but we may "use standard dictionary definitions to assist in determining the ordinary meaning of statutory language." <u>Riva</u> v. <u>Mass.</u>, 61 F.3d 1003, 1008 n.4 (1st Cir. 1995). "Lodging" means "a place to live" or "sleeping accommodations." Merriam-Webster's Collegiate Dictionary (11th ed. 2003), available at www.meriam-webster.com/dictionary/lodging (defining "lodging" as "a place to live: dwelling" and "sleeping accommodations") (last visited February 25, 2013); The American Heritage Dictionary of the English Language(5th ed. 2011), available at www.ahdictionary.com/word/search.html?q=lodging (defining "lodging" as "a place to live" or "sleeping accommodations")(last visited February 25, 2013).

-14-

in Florida.  See id. at 1046 (finding victim's yard bounded only by "several unevenly spaced trees" did not constitute the residence's curtilage because it was not enclosed); Chambers v. State, 700 So.2d 441, 442 (Fla. Dist. Ct. App. 1997) (upholding burglary of a dwelling conviction where wooden and chain link fence with a ten-to fifteen-foot gap surrounding the yard was considered part of the residence's curtilage); see also T.J.T. v. State, 460 So.2d 508 (Fla. Dist. Ct. App. 1984) (upholding burglary conviction where defendant attempted to remove a window from a residence with a fenced-in yard as its curtilage).

Because Florida's definition of burglary of a dwelling includes both burglary of a building or conveyance and burglary of such building's or conveyance's curtilage, we cannot tell whether Ramírez's burglary conviction involved the former, the latter, or both.  The parties agree the appropriate adjudicative documents do not narrow it down.  See United States v. Almenas, 553 F.3d 27, 33 (1st Cir. 2009) (examination of appropriate adjudicative records is allowed where statutory definition is too broad to determine the offense of conviction).[10]  The statute's inclusion of curtilage, however, matters when comparing Florida's definition of burglary of

[10]The parties discussed certain state court records at the sentencing hearing, but have not submitted those documents as part of the record on appeal.  We have found none in the district court record.  This, in the end, makes no difference since the parties agree that Ramírez was convicted of burglary of a dwelling and that the state court records provide no further information to help narrow down the offense of conviction.

a dwelling with the generic meaning of the offense under the Guidelines. Generic burglary of a dwelling requires the dwelling be an enclosed space used or designed for human habitation. Under Florida's definition of burglary of a dwelling, the building or conveyance must be designed for lodging at night, but the curtilage does not.

In United States v. Gomez-Guerra, 485 F.3d 301, 303-04 (5th Cir. 2007), the Fifth Circuit addressed head-on whether Florida's burglary of a dwelling, and its inclusion of curtilage, is categorically the equivalent of burglary of a dwelling under the Guidelines and concluded it was not. Generic burglary of a dwelling, the court said, does not cover the burglary of curtilage -- "the grounds around the dwelling" -- it only prohibits the unlawful entry into the dwelling itself. Id. at 304. Because, in the court's view, the inclusion of "curtilage" extends burglary of a dwelling in Florida beyond its generic meaning, the court held that the defendant's 1997 Florida burglary conviction was not a crime of violence under § 2L1.2(b) of the Guidelines. Id.; accord United States v. Rodriguez-Lopez, 472 Fed. Appx. 333, 333-34 (5th Cir. 2012) (finding Florida's inclusion of curtilage in its definition of dwelling renders the statute outside of the contemporary meaning of the enumerated burglary of a dwelling crime of violence under § 2L1.2).

We agree with the Fifth Circuit and hold the inclusion of "curtilage" makes Florida's definition of burglary of a dwelling broader than the generic meaning of burglary of a dwelling under the Guidelines.[11]  Human habitation is the _sin qua non_ of a "dwelling."  In cases where courts found a particular state statute's definition of burglary of a dwelling corresponded with its generic definition under the Guidelines, each statute limited "dwelling" to places of human habitation.  And, the spaces at issue in those cases -- tents and vessels in _Murillo-Lopez_, 444 F.3d at 345, hotel guest rooms in _McClenton_, 53 F.3d at 587, and the unspecified structures used as "weekend fishing retreats" in _Graham_, 982 F.2d at 316, all satisfied the human-habitation test. _See, e.g._, _McClenton_, 53 F.3d at 587 ("hotel guest room is intended for use as human habitation, albeit, in most circumstances, on a transient or temporary basis").  None of the statutes at issue in those cases broadened the definition of a dwelling to include the area, surrounding the building or conveyance, which is not used or intended to be used as a place where people stay or sleep.  But that is precisely the statute before us.  _See_ _McFalls_, 592 F.3d at 712 (finding state's burglary statute did not qualify as a an enumerated crime of violence because of its broad definition of

_____

[11]Albeit based on their own reading of _Taylor_, the parties agree that Florida's definition of burglary is broader than "generic burglary," since Florida's definition of dwelling includes curtilage.

-17-

"dwelling" which extends to uninhabitable structures as far as 200 yards from a dwelling house). Given the overbreadth of Florida's definition of "dwelling," we cannot say burglary of a dwelling under Florida law is categorically the equivalent to the enumerated burglary of a dwelling offense under the Guidelines. Thus, Ramírez's Florida burglary conviction does not constitute a crime of violence under the enumerated offenses clause of U.S.S.G. § 4B1.2(a)(2). That does not end our analysis, however.

As the government argues, Ramírez's prior conviction may still qualify as a crime of violence under § 4B1.2(a)(2)'s residual clause -- if it "involves conduct that presents a serious potential risk of physical injury to another."[12] U.S.S.G. § 4B1.2(a)(2). See, e.g., Brown, 631 F.3d at 578 (turning to the residual clause and employing the categorical approach to determine whether the predicate at issue was a crime of violence under § 4B1.2(a)(2)).

To qualify as a crime of violence under the residual clause, the predicate offense must "in the ordinary case . . . present[ ] a serious potential risk of physical injury to another," similar to the risk presented by the clause's enumerated offenses. James v. United States, 550 U.S. 192, 208 (2007); Jonas, 689 F.3d

---

[12]Ramírez makes much of the fact that the government raises its residual clause argument for the first time on appeal. At the time of sentencing, however, Ramírez argued -- perhaps predicting the government's position -- that his Florida burglary conviction did not qualify as a crime of violence under that clause. He cannot now, therefore, claim any unfair surprise by the government's argument on appeal.

at 86-87. "This determination hinges on a commonsense assessment of the risk of violence that typically ensues during the commission of the crime." Jonas, 689 F.3d at 87 (citing Sykes, 131 S.Ct. at 2273-74). The offense must also be "roughly similar in kind to the enumerated offenses." Jonas, 689 F.3d at 87; Sykes, 131 S.Ct. at 2272-74 (reiterating the relevant standards for evaluating whether an offense is a crime of violence). An offense is similar in kind to an enumerated offense if it typically "involves purposeful, violent and aggressive conduct." Jonas, 689 F.3d at 87; Farrell, 672 F.3d at 33.

Ramírez does not dispute that his "burglary of a dwelling" conviction is roughly similar in kind to the "burglary of a dwelling" offense listed in the enumerated offenses clause. See Brown, 631 F.3d at 579 (noting that burglary of a building is "comparable in kind" to burglary of a dwelling)(emphasis in original). We focus, therefore, on comparability of risk.

The serious potential risk of physical injury of entering a building or conveyance "which has a roof over it and is designed to be occupied by people lodging therein at night," or the curtilage of such building or conveyance, Fla. Stat. § 810.011(2), under Florida law is comparable to that presented when a generic burglary of a dwelling occurs. The statute's requirement that the conveyances or buildings be designed for lodging at night narrows the types buildings and conveyances that may qualify as dwellings.

A trailer, for instance, is designed for lodging at night, whereas a car is not; it is designed for transporting people and things from one location to another. "Dwellings," we have emphasized, are intended to be "occupied at all hours by individuals." Brown, 631 F.3d at 579. A structure or conveyance that has a roof over it and is designed specifically for lodging at night has the same purpose. Unlike buildings that tend to be "wholly unoccupied at night" which might make "the threat of violence during the offense [ ] fairly speculative," id., a structure or conveyance where people live or sleep at night, "creates much of the same risk of physical confrontation with a property owner, law enforcement official, or other third party as one who attempts to enter the structure itself." James, 550 U.S. at 213. In both instances, the burglar creates the risk "that an innocent person might appear while the crime is in progress" and that a confrontation with police or bystanders attempting to investigate might occur. Id. at 203. Indeed, the risk of a possible confrontation with a third party is heightened here precisely because the building or conveyance must be designed for a person to sleep there at night.

The same serious risk exists where a defendant breaches the building's or conveyance's curtilage. As the Supreme Court explained in James, inclusion of curtilage in Florida's definition does not decrease the risk of physical confrontation to the extent that it takes the offense outside of the residual clause. Id. at

213 (holding prior conviction qualified as a violent felony under the ACCA's residual clause, despite the inclusion of curtilage in Florida's burglary statute). The "curtilage adjacent to a structure is typically enclosed 'to keep out unwanted vistors-especially those with criminal motives.'" Sanchez-Ramírez, 570 F.3d 82-83 (quoting James, 550 U.S. at 213). Thus, one who attempts to enter the curtilage which surrounds the building or conveyance must be within close "physical proximity to the structure." James, 550 U.S. at 213. In attempting to breach that enclosure, the burglar "creates much the same risk of confrontation . . . as [ ] one who attempts to enter the structure itself." Id.; see United States v. Pakala, 568 F.3d 47, 55 (1st Cir. 2009) (holding defendant's convictions of burglary of a dwelling in Florida -- involving either a building or the curtilage thereof -- presented a serious risk of physical injury to another and constituted violent felonies under the ACCA's residual clause); see also Sanchez-Ramírez, 570 F.3d at 82-83 (holding the risks to third parties identified in James were equally prevalent in the predicate burglary of an unoccupied structure -- a church -- to constitute a violent felony under the ACCA's residual clause).

While James and Pakala examined Florida's burglary statute under the residual clause of the ACCA's violent felony provision, the residual clause in the crime of violence provision under the Guidelines is identical to it. See 18 U.S.C. §

-21-

924(e)(2)(B)(ii); U.S.S.G. § 4B1.2(a)(2).  Our cases as well as Supreme Court decisions interpreting whether a prior conviction qualifies as a violent felony under the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) are, therefore, highly persuasive in deciding whether the conviction is a crime of violence under § 4B1.2(a)(2).  See United States v. Grupee, 682 F.3d 143, 148-49 (1st Cir. 2012) (relying on circuit precedent that a conviction for assault and battery of a police officer is a violent felony under the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) to conclude the same was a crime of violence under "the identical residual clause" of U.S.S.G. § 4B1.2(a)(2)).  Listing the more limited "burglary of a dwelling" in the enumerated offenses clause in U.S.S.G. § 4B1.2(a)(2), as Ramírez argues, does indeed affect how we interpret whether burglary of a dwelling is a crime of violence under the Guidelines' residual clause.  Giggey I, 551 F.3d at 36.  It only means, however, that we consider the Guidelines' more limited enumerated burglary of a dwelling offense when comparing the degree of risk between the enumerated offenses and Ramírez's prior offense.  And here, we find the degree of risk posed by the enumerated burglary of a dwelling offense in the Guidelines comparable to that presented by the burglary of a dwelling as Florida has defined it.

Brown and Farrell, two cases upon which Ramírez heavily relies to support his argument that burglary of a dwelling under

Florida law is not a crime of violence under the residual clause, dealt with breaking and entering into non-dwellings which do not involve the same considerations of risk where, as here, dwellings, and enclosed spaces surrounding them, are involved.  Brown, 631 F.3d at 575, 578-79 (night-time breaking and entering of a non-dwelling building); Farrell, 672 F.3d at 32 (breaking and entering into a non-structure, such as a vessel or ship).  In fact, our reasoning in Brown only further supports our conclusion that burglary of a dwelling constitutes a crime of violence within the meaning of the Guidelines' residual clause.  There, we held burglary of a building was not comparable in risk to burglary of a dwelling under the Guidelines.  Brown, 631 F.3d at 579.  We looked to the Massachusetts breaking and entering statute at issue and saw it covered a broad range of structures (including storage sheds and detached garages) where "one might rarely encounter someone else at night."  Id.  Unlike dwellings, we said, buildings are not intended to be occupied by individuals at all hours, making the risk that violence will occur during the offense at night speculative.  Id.  Here, the building or conveyance in the Florida statute must be designed for occupation at night to constitute a dwelling which, as we recognized in Brown, increases the serious potential risk of injury to another.  And, that risk is similarly heightened where an enclosed area surrounding that building or conveyance is breached by an unwelcomed visitor.

In sum, we find that burglary of a dwelling under Florida law is similar in kind and in risk to the enumerated burglary of a dwelling offense to qualify as a crime of violence under the Guidelines' residual clause.[13]  We therefore find no error in the district court's application of the career offender enhancement.

## Use-of-Juvenile Enhancement

Ramírez was sentenced to thirteen years imprisonment -- a downward departure from the lowest possible sentence in his applicable Guidelines range.  On appeal Ramírez avers the district court's sentence was wrought with procedural error, arguing that the court miscalculated his Guidelines range by applying 21 U.S.C. § 861(b) despite its acknowledgment that Ramírez did not admit to knowing that BR was a minor at the change-of-plea hearing, and that the court's explanation for the sentence imposed was inadequate. We tackle the former issue first, which in the end, leads us to conclude remand is appropriate.

We generally review claims of procedural error in sentencing for abuse of discretion.  Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Leahy, 668 F.3d 18, 21 (1st Cir. 2012).  Because Ramírez objected repeatedly to the sentencing

---

[13]Ramírez all but abandons his alternative argument that the residual clause is unconstitutionally vague, recognizing that we have rejected vagueness challenges to the residual clause.  United States v. Hart, 674 F.3d 33, 41 n.3 (1st Cir. 2012) (citing James, 550 U.S. at 210 n.6).  As we have before, we reject his challenge here.

enhancement under § 861(b) and the calculation of the Guidelines range that resulted from applying it -- objections made prior to sentencing and in a motion to correct after sentencing -- we review Ramírez's claim for abuse of discretion.

As we all know, the Guidelines are no longer mandatory after United States v. Booker, 543 U.S. 220 (2005), but calculating the correct Guidelines range remains the starting point for determining a defendant's sentence. Gall, 552 U.S. at 49-51; United States v. Gobbi, 471 F.3d 302, 313 (1st Cir. 2006). This task is of such import that a calculation error will often require resentencing. United States v. Rodriguez, 630 F.3d 39, 41 (1st Cir. 2010) (emphasizing that "starting with the Guidelines' framework - which gives judges an idea of the sentences imposed on equivalent offenders elsewhere - helps promote uniformity and fairness" as Congress intended). The sentence given may fall inside or outside the advisory Guidelines range, provided that it stays within the statutory range and considers the 18 U.S.C. § 3553(a) sentencing factors. See, e.g., Gall, 552 U.S. at 41, 49-50 & n. 6; Booker, 543 U.S. at 259-60. When it falls below the bottom of the Guidelines range, a defendant may still challenge the incorrect Guidelines calculation. United States v. Paneto, 661 F.3d 709, 715 (1st Cir. 2011).

In this case, Ramírez challenges one aspect of the district court's Guidelines calculation: the enhancement under 21

U.S.C. § 861(b) for "knowingly or intentionally" using a person who is a minor when committing the offense under § 841(a)(1). Ramírez pled guilty to violating § 841(a)(1) which carries the penalties under § 861(a)(1) when a person "at least eighteen years of age . . . knowingly and intentionally . . . employ[s], hire[s], use[s] . . . a person under eighteen years of age" in violating § 841(a)(1). 21 U.S.C. § 861(a)(1). A defendant who knowingly and intentionally uses a minor in violating § 841(a)(1) is "subject to twice the maximum punishment otherwise authorized and at least twice any term of supervised release" and "[e]xcept to the extent a greater minimum sentence is otherwise provided," a mandatory minimum sentence of one year imprisonment. 21 U.S.C. § 861(b). The § 861(b) enhancement pushes Ramírez's Guidelines range from 151 to 188 (what Ramírez says it should have been) to 188 to 235 (what the PSR and judgment say it is).

Ramírez argues that under § 861(a)(1), the government must prove that he knew BR was a minor and because he did not admit to knowing that at his change-of-plea hearing, no enhancement applies. The government disagrees, claiming that no proof of knowledge is necessary to apply the enhancement. Every circuit to have considered the use-of-juvenile provision has concluded that the government is not required to prove the defendant knew the person used was underage. United States v. Frazier, 213 F.3d 409, 418-19 (7th Cir. 2000); United States v. Cook, 76 F.3d 596, 601

(4th Cir. 1996);  United States v. Chin, 981 F.2d 1275, 1279-80 (D.C. Cir. 1992) (R.B., Ginsburg, J.);  United States v. Williams, 922 F.2d 737, 738-39 (11th Cir. 1991);  United States v. Valencia-Roldan, 893 F.2d 1080, 1083 (9th Cir. 1990); United States v. Carter, 854 F.2d 1102, 1108-09 (8th Cir. 1988).

We need not decide whether we agree with our sister circuits, as there is a more glaring problem:  the record is inconsistent as to whether the district court actually applied the enhancement.  Without knowing that, we cannot say whether the district court got the Guidelines calculation right or wrong.  As further explained below, the record raises more questions than it provides answers.

From the district judge's repeated statements at the change-of-plea and sentencing hearings that Ramírez had not admitted to knowing BR was a minor for sentencing purposes, it appears the judge had decided that proof of knowledge (or admitting knowledge) was required, which would indicate his disagreement with our sister circuits on the issue.  At the change-of-plea hearing, Ramírez admitted to using BR in violating 21 U.S.C. § 841, but denied knowing BR was a minor.  Turning to the parties, the judge asked, "Well, he had to know he's a juvenile, doesn't he?" and asked whether the statute required that Ramírez know that BR was a minor or that he "turned out to be" a minor.  The government had no answer and indicated its willingness to brief the issue.  The judge

-27-

did not respond whether he would like any briefing.  Instead, he said that "when we come to sentencing, to the extent that this may impact me, [Ramirez is] not admitting that" and that he would "credit" Ramírez's denial for sentencing purposes.

At sentencing, when discussing the applicability of U.S.S.G. § 3B1.4 -- which, like 21 U.S.C. § 861, increases the Guidelines range if the defendant uses a minor in the crime -- the judge reiterated that Ramírez had not admitted to knowingly using a minor at the plea hearing, stating that "if the government had wanted that, I expect him to admit it at the time of the plea." Going further, the judge said that Ramírez is "either going to admit it or a jury's going to find it.  I think that's what the constitution requires."  While he made no ruling on whether proof of knowledge is required, at least on this record, the judge seemed to be saying it was and that he had no intention of applying the use-of-juvenile enhancement under § 861 to determine the offense level and, consequently, the Guidelines range.

The initial judgment, however, turns that reading of the record on its head.  The judgment reflects the judge's acceptance of the PSR's calculations of the Guidelines range and the application of § 861(b).  To recap, the PSR determined that the career offender provision applied, that Ramírez's career offender total offense level was 31 and his criminal history category was VI, placing him in a Guidelines range of 188 to 235 months.  To

calculate the career offender total offense level, the PSR applied the statutory maximum of forty years (under the § 861(b) enhancement for Count IV) consistent with U.S.S.G. § 4B1.1(b)(2). See U.S.S.G. § 4B1.1(b)(2)(offense statutory maximum of 25 years or more yields an offense level of 34). By adopting the PSR's calculations in the judgment, the judge had agreed to apply the 21 U.S.C. § 841(a)(1)'s maximum penalty: forty years imprisonment under § 861(b) and six years of supervised release for knowingly using a minor.

Obviously confused by the inconsistency between the sentence imposed and the judge's in-court statements, Ramírez moved to correct the sentence. He argued that the judge mistakenly determined the Guidelines range was 188 to 235 months when he imposed the 156-month sentence. Ramírez averred that without the § 861(b) enhancement, the career offender total offense level should have been 29, placing him in a Guidelines range of 151 to 188.[14] Thus, in his view, the statutory maximum under Count IV should have been twenty (not forty) years and the term of supervised release should have been three (not six) years. By

_____

[14]If the enhanced statutory maximum of 40 years under § 861(b) did not apply, Ramírez's career offender total offense level would be 32 under U.S.S.G. § 4B1.1(b)(3), as the statutory maximum for his offense would be 20 years under 21 U.S.C. § 841(b)(1)(B) and (C). The career offender total offense level of 32, after a reduction of 3 levels for acceptance of responsibility, would result in a career offender total offense level of 29 which, combined with his career offender criminal history category of VI, would yield an advisory Guidelines range of 151 to 188 months.

reducing the term of supervised release from six to three years in the corrected judgment, the judge seemed to agree with Ramírez on the basis for the change:  that the § 861 enhancement did not apply.  But, a close look at the amended judgment reveals that the Guidelines range was left unchanged, as was the career offender total offense level which remained at 31.  That offense level, however, could stay at 31 only by subjecting Ramírez to twice the maximum punishment authorized under Count IV for his violations of § 841(a)(1) (Counts I and II).  See 21 U.S.C. §§ 841(b)(1)(B) & (C), 861(b).[15]

The amended judgment does not clarify whether the judge applied the enhancement.  The record fares no better:  the judge's statements at the change-of-plea and sentencing hearings suggest no enhancement would be applied; the judgment seems to apply the enhancement; and the amended judgment may or may not have applied it.  And, despite being well-aware of the objection to any enhancement for use of a minor,  the judge never decided whether § 861(a)(1) requires proof of knowledge that the person being used is a  minor.[16]  Ramírez's argument that the judge erred in calculating

---

[15]Under U.S.S.G. § 5D1.2(c), the term of supervised release is six years on Count IV (when doubling the three-year supervised release term from Counts I and II).  See U.S.S.G. § 5D1.2(c).

[16]Ramírez objected to the enhanced penalty for use of a minor under § 861 on at least three occasions:  in his objections to the PSR's use of the enhanced penalty prior to sentencing, in his sentencing memorandum, and in his motion to correct the judgment and for resentencing.

the Guidelines range, however, rests upon his assertion that the government must prove (or the defendant must admit) to knowing the person was a minor to trigger the § 861 sentencing enhancement. If the judge's conclusion was that proof of knowledge was required and he applied the § 861 enhancement, there is no record of his finding that Ramírez had the requisite knowledge.

Given the ambiguity in the record and the absence of any ruling by the judge about whether the § 861 enhancement applied, remand is appropriate to allow the district court to clarify its decision and make any adjustments it sees fit. United States v. Levy, 897 F.2d 596, 599 (1st Cir. 1990) (noting that if the record is ambiguous, a court of appeals may remand for clarification purposes); see also United States v. Aker, 181 F.3d 167, 174 (1st Cir. 1999) (vacating the sentence and remanding the case for further clarification about its ruling on the defendant's request for possible departure on grounds of significantly diminished mental capacity). We express no opinion on the outcome at this stage. See United States v. Quinones, 26 F.3d 213, 220 (1st Cir. 1994). In light of our decision to vacate and remand on these grounds, we need not reach Ramírez's final argument that the judge failed to adequately explain his sentence.

## CONCLUSION

For the foregoing reasons, we vacate the sentence and remand for further consideration consistent with this opinion.